**John WILSON and Mary Christopher, on their own behalf, and on behalf of others similarly situated, Plaintiffs,**

v.

**Hon. Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

Civ. A. No. 83–3771.

United States District Court,
D. New Jersey.

Oct. 28, 1985.
Supplemental Opinion Accompanying
Order Nov. 14, 1985.

Richard E. Yaskin, Jacobs & Schwalbe, P.C., Voorhees, N.J., for plaintiffs.

Thomas W. Greelish, U.S. Atty. by Laurie J. Gentile, Sp. Asst. U.S. Atty., Newark, N.J., for defendant.

## OPINION

BROTMAN, District Judge.

This is an action for declaratory and injunctive relief against the Secretary of Health and Human Services ("Secretary"), challenging her policy of denying or terminating disability benefits under the Supplemental Security Income ("SSI") and Old Age Survivor and Disability Insurance ("OASDI") programs solely on the basis that claimants' impairments are not medically "severe" and without any consideration of each claimant's age, education, work experience, residual functional capacity or ability to return to his or her former work. In July 1985, the Third Circuit declared the Secretary's non-severe impairment regulation, 20 C.F.R. § 404.1520(c),— and, implicitly, the challenged policy—invalid. *Baeder v. Heckler*, 768 F.2d 547 (3rd Cir.1985).

The Secretary did not appeal the *Baeder* decision and defends against the instant motions for class certification and preliminary injunctive relief by contending that her new policy, as articulated in an as yet unpublished interpretive ruling, fully complies with the Third Circuit's holding. For the reasons discussed in this opinion, the court finds that the Secretary's new policy directly contradicts the holding of *Baeder*. Plaintiffs' motions for class certification and preliminary injunctive relief will be granted.

### I. *Procedural Background*

John Wilson initiated this action on October 11, 1983 when he appealed the denial of his application for disability insurance and SSI benefits to this court. That denial was based on a finding that Wilson suffered from no severe medical impairment; the Administrative Law Judge ("ALJ") never considered vocational factors. Plaintiff Mary Christopher was also denied disability and SSI benefits at the administrative level on the grounds of no severe medical impairment without consideration of vocational factors. Christopher's administrative appeal was pending before the Appeals Council when she joined Wilson as a named representative of the proposed class.[1]

On October 1, 1984, plaintiffs filed motions for leave to file an amended complaint, preliminary injunctive relief and class certification. After two rounds of briefs, the court heard oral argument on those motions on December 7, 1984 and reserved decision. On February 1, 1985, the court issued an opinion and order which allowed plaintiffs to incorporate new documentary material into the record but did not address the central issues. In August, at the court's request, the parties submitted supplemental comments in light of

---

**1.** Pursuant to that appeal, the Appeals Council reversed the ALJ and granted Christopher's application for benefits. Defendant argues that Christopher is therefore an improper representative for the proposed class. Plaintiffs argue, and the court agrees, that Christopher may continue to represent the class because she was a valid representative when the motion for class

certification was filed in October 1984. Moreover, the court notes that if Christopher's successful appeal were a bar to her ability to represent the class, the Secretary could hypothetically moot this and similar actions merely by granting benefits to the named plaintiffs and their replacements.

the Third Circuit's July 24, 1985 decision in *Baeder v. Heckler,* 768 F.2d 547 (3rd Cir. 1985).

After the Secretary decided not to seek further appellate review of *Baeder,* she presented to Hon. Clarkson S. Fisher, Chief Judge of the District of New Jersey, an order to show cause why all identified cases pending in the district should not be consolidated and remanded for review in accordance with *Baeder.* Chief Judge Fisher signed the order on September 16, 1985, making it returnable October 10, 1985.[2]

In light of Chief Judge Fisher's order, plaintiffs requested that this court accelerate its consideration of the instant motions for class certification and preliminary injunctive relief. At a September 26, 1985 conference with both parties, this court entered an order to show cause, returnable October 9, 1985, why class certification and preliminary injunctive relief should not be granted. On that date, the court also signed an order allowing plaintiffs to file their amended class action complaint.

After oral argument at the October 9, 1985 hearing, this court entered an order which certified the proposed class under Fed.R.Civ.P. 23(a) and 23(b)(2) and instructed the parties to submit a joint proposed order for injunctive relief to the court within three weeks.[3]

## II. *Statutory Framework*

The Social Security Act ("Act") defines "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a person is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423(d)(2)(A).

Regulations promulgated by the Secretary under the Act set forth a five-step sequential evaluation procedure to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)–(f). The first step of the sequential evaluation requires the claimant to demonstrate that he is not currently working.[4] If he is, the claim will be denied at that point. 20 C.F.R. § 404.-1520(b). Second, the claimant must show, solely on the basis of medical evidence, that his impairment is "severe." In other

**2.** Cases invoking the severity regulation which were pending before the Hon. Dickinson R. Debevoise are already being remanded pursuant to an earlier order to show cause signed by Judge Debevoise on September 10, 1985. Similarly, on May 10, 1985, the Hon. Harold A. Ackerman issued an order to show cause and subsequently remanded cases pending before him despite the pending appeal in *Baeder,* in light of the district court's decision in that case. *Baeder v. Heckler,* 768 F.2d 547 (D.N.J.1984) (Gerry, J.).

**3.** The order defined the class as follows:
All persons in the State of New Jersey who have filed or will file applications for disability benefits under Title II and/or Title XVI of the Social Security Act, as amended, and whose benefits have been or will be denied or terminated based upon a finding of no severe impairment pursuant to the policies set forth in 20 C.F.R. §§ 404.1520(a) and .1521, 416.-920(c) and .921 (1983), and Social Security Ruling 82–55 (1982).

The plaintiff class does not include, at this time, any such persons who received decisions of the Secretary on or before July 25, 1984 and who failed to file a Complaint in Federal District Court or to appeal to the next level of administrative review, within 60 days after the date of receipt of such decision.
The order further provided that if the parties were unable to fashion a mutually satisfactory order, each should submit its own version so the court could determine the appropriate scope of and timetable for injunctive relief.
The court notes that SSR 82–55 was rescinded (or, in the words of the Secretary, "obsoleted without replacement") by SSR 85–III–II (April 1985).

**4.** Since the Secretary's regulations use the masculine pronoun to refer to all categories of claimants, this court will do likewise. No gender bias is intended or should be inferred.

words, unless the impairment "significantly limits [his] physical or mental ability to do basic work activities," the claim will be denied summarily, without reference to the claimant's age, education and work experience. 20 C.F.R. § 404.1520(c).[5]

Third, if the impairment is as severe as those listed in Appendix 1 of the regulations, 20 C.F.R. Part 404, Subpart P, the claimant will receive benefits without regard to vocational factors. 20 C.F.R. § 404.1520(d).[6] Fourth, if the impairment is less severe than those listed in Appendix 1, the claimant must show that his impairment impedes him from performing his past work. If he can perform his past work, his claim will be denied at this fourth step. 20 C.F.R. § 404.1520(e). Fifth, if the claimant cannot perform his past work, the Secretary must consider his "residual functional capacity" (i.e. the level of work he can perform, based on medical evidence, despite his impairment), age, education, and prior work experience. 20 C.F.R. § 404.1520(f).

In *Baeder*, the Third Circuit held that the severity regulation, 20 C.F.R. § 404.-1520(c), which is the second step of the sequential evaluation, "is inconsistent with the Social Security Act, and therefore, is invalid." *Baeder, supra*, 768 F.2d at 553. The *Baeder* court reviewed the regulation's language and history as well as statistical evidence in reaching its decision. This court need not repeat that analysis, except to note that since 1982, "a full forty percent" of disability applicants have been denied benefits without any evaluation of their age, education or past relevant work experience. *Id.* at 552. The Third Circuit summarized the reasons for its holding as follows:

We believe that section 1520(c) of the regulations does more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working. It also allows the Secretary to bypass a full-scale evaluation, which would consider and relate both medical and vocational factors, of an applicant who might actually be entitled to benefits were his age, education and work experience considered. We cannot analyze the severity regulation except according to its plain language and the manner in which the Secretary uses it. We will not rewrite the regulation to make it conform to the statutory mandate, although other courts have directed the Secretary to apply the regulation only to bar the claims of those with *de minimis* medical complaints.

*Id.* at 553 (footnotes and citations omitted).

In *Baeder*, the Secretary tried to justify the severe impairment regulation as a *de minimis* standard intended only to screen out those applicants whose medical problems "could not possibly prevent them from working." *Id.* at 552. The Secretary further contended that as applied, the regulation's scope extended to a consideration of vocational factors. The Third Circuit posited that if the Secretary were to apply the regulation in that way, it "might find that it implicitly considered vocational factors and therefore was consistent with the statute." *Id.* But because the court expressly found that the Secretary was not applying the severity regulation as a *de minimis* requirement, it did not hesitate to invalidate the regulation.

In the instant case, the Secretary argues that class certification and preliminary injunctive relief are unnecessary because she

---

**5.** The severity regulation, 20 C.F.R. § 404.-1520(c), reads in full:

(c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age,

education, and work experience. However, it is possible for you to have a period of disability for a time in the past even though you do not have a severe impairment.

**6.** Appendix 1 fills 33 pages in the Code of Federal Regulations with detailed criteria for determining whether a particular impairment qualifies as severe.

has voluntarily requested that all pending cases in the District of New Jersey which involve the severity regulation be remanded for review "in accordance with *Baeder.*" Defendant's Supplemental Memorandum at 3. In support of her argument that she intends "to review these claims on remand in a manner acceptable to the [Third Circuit]," the Secretary proffers a new Social Security Ruling ("new SSR") that was signed on September 17, 1985 and will be issued and applied shortly. The new SSR, as yet unnumbered, purports to interpret and clarify the Secretary's policy regarding the severity of impairments and to reflect recent circuit court decisions, including *Baeder. See* SSR, *Titles II and XVI: Medical Impairments That Are Not Severe,* Exhibit I to Defendant's Supplemental Memorandum.

The Secretary's interpretation of *Baeder,* as outlined in the new SSR, is that the severity regulation may still be applied as a *de minimis* standard, taking certain vocational factors into account at the second step of the sequential evaluation. The court emphatically disputes that interpretation.

After describing the regulation's legislative and semantic history, the new SSR describes itself as "part of the ongoing reevaluation [which] interprets and clarifies the current policy on not severe impairment, describes the threshold intended, and reflects recent legislation." New SSR at 4. The new SSR adds that its purpose is "to clarify that [the Social Security Administration's] policy is consistent with various court decisions," *id.,* in particular *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985), *Estran v. Heckler,* 745 F.2d 340 (5th Cir. 1984), and *Baeder.* While the new SSR may well comply with the Fifth Circuit's holdings in *Stone* and *Estran,* it directly contradicts the Third Circuit's holding in *Baeder.* In fact, even in asserting its alleged compliance with *Baeder,* the new SSR boldly lifts the Third Circuit's language and quotes it wholly out of context.

The new SSR states flatly that *Baeder* suggested that "the severity regulation is *to do no* 'more than allow the Secretary to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working.' " New SSR at 5, citing *Baeder, supra,* 768 F.2d at 553 (emphasis added). The three underscored words surreptitiously replace one verb—"does"—and thus the sentence completely misrepresents the Third Circuit's original meaning.[7] This court will not countenance the Secretary's blatant manipulation of the Third Circuit's language and intent. The Secretary's interpretation of *Baeder,* as explained at length in the new SSR, can simply not be supported by the Third Circuit's plain language. The Third Circuit *invalidated* the severity regulation and barred the Secretary from applying it in *Baeder*'s case. It went further and noted that its opinion "compels this court to overturn any denial of benefits made because the Secretary and the ALJ concluded that the applicant's impairment was not severe enough, without reference to vocational factors, to meet 20 C.F.R. § 404.1520(c)." *Baeder, supra,* 768 F.2d at 553, n. 5.

*Baeder* did not present the Secretary with an opportunity to develop a *de minimis* standard, as she purports to do in the new SSR. Rather, the court indicated that had the Secretary applied the regulation in a *de minimis* fashion in the past instead of using it as an unreasonably high threshold, it might then have upheld that past practice. *Baeder*'s invalidation of 20 C.F.R. § 404.1520(c) simply forecloses the Secretary from applying or interpreting that section in any way.

■ Ordinarily, the judicial review of regulations promulgated under the Act is limited to whether the regulations exceed the Secretary's statutory authority and whether they are arbitrary and capricious. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983). Because the Third Circuit has already ruled

---

**7.** The original sentence read: "We believe that section 1520(c) of the regulations *does more*

than allow the Secretary to deny benefits summarily...." 768 F.2d at 553 (emphasis added).

on the invalidity of the non-severe impairment regulation, and because the new SSR continues to apply the invalidated regulation, the court holds that the new SSR is arbitrary and capricious for its patent disregard of Third Circuit precedent.[8]

### III. *Preliminary Injunctive Relief*

Plaintiffs seek a preliminary injunction (1) prohibiting the Secretary from denying or terminating OASDI or SSI benefits due to the asserted non-severity of the claimant's impairments; (2) directing the Secretary to initiate or restore payments of benefits to all members of the proposed class who (a) received decisions denying or terminating benefits that were rendered at any stage of the administrative process on or after July 26, 1984; or (b) had pending challenges to such decisions on July 26, 1984; and (3) directing the Secretary to reopen the applications of all class members whose applications for benefits have been denied at any stage of the administrative process since July 26, 1984 and to redetermine those applications without reference to 20 C.F.R. § 404.1520(c).

The standard for evaluating a motion for a preliminary injunction was recently reiterated by the Third Circuit in *Si Handling Systems, Inc. v. Heisley,* 753 F.2d 1244 (3rd Cir.1985). The court must consider four factors: (1) whether the moving party has shown a reasonable probability of success on the merits; (2) whether the moving party will suffer irreparable injury if preliminary injunctive relief is denied; (3) whether the balance of hardships tips toward or away from the moving party; and (4) whether granting preliminary relief would be in the public interest. *See also Klitzman, Klitzman and Gallagher v. Krut,* 744 F.2d 955, 959 (3rd Cir.1984); *Continental Group v. Amoco Chemicals Corp.,* 614 F.2d 351, 356, 357 (3rd Cir.1980).

In light of *Baeder* and of the new SSR, the court believes that plaintiffs would prevail on the merits with respect to the requested injunctive relief. Contrary to the Secretary's assertion, the *Baeder* opinion does not "obviate the need for injunctive relief." Defendant's Supplemental Memorandum at 16. The *Baeder* court did refuse to affirm the district court's "all-encompassing" injunction barring the Secretary from conducting any proceedings whatsoever using the severe impairment regulation. *Baeder, supra,* 768 F.2d at 550, 553. However, the Third Circuit noted that it did so because the district court did not have the authority to issue so broad an injunction in the context of an individual disability appeal. *Id.* In contrast, the instant action is appropriate for such relief since plaintiffs seek an injunction in the context of a motion to certify a broad class of disability applicants.

Denial or termination of disability benefits can cause immediate, irreparable injury that cannot be compensated by a retroactive award at some future date. Before named plaintiff Christopher was awarded benefits by the Appeals Council, she had no independent source of income and relied solely on her husband's Social Security retirement benefits and other savings. She had foregone new clothes and medical care and had closed off several rooms of her house to save energy costs. Affidavit of Mary Christopher, September 7, 1984 ("Christopher Aff."). Named plaintiff Wilson and his wife share a combined Social Security retirement income of $741.00 a month. To stretch that stipend, he sometimes helps a friend collect waste cardboard for between $7.00 and $10.00 a week. Wilson too has foregone regular medical treatment because he lacks the Medicare insurance for which an award of disability benefits would qualify him. Affidavit of

---

**8.** Plaintiffs also contend that the new SSR is unlawful because the Secretary violated the notice and comment procedures of the Administrative Procedure Act, 5 U.S.C. § 553, by failing to inform the public that the new ruling represents a major change in the substantive standards by which disability benefit claims will be evaluated. In view of the court's conclusion that the new SSR contradicts the holding of *Baeder* by continuing to apply the invalidated severity regulation, the APA issue need not be reached.

John Wilson, October 1, 1984 ("Wilson Aff.").

The proposed class encompasses people who are elderly, sick, disabled and poor. In many, if not most, cases, the physical and mental suffering that prompts a person to seek disability benefits is accompanied by economic hardship when those benefits are terminated or denied.[9] In similar cases, several courts have concluded that the loss of benefits constitutes irreparable harm. *See, e.g., Lopez v. Heckler*, 572 F.Supp. 26 (C.D.Cal.1983) ("Retroactive relief [for plaintiffs] would be inadequate and perhaps too late, to insure that the purpose of Social Security benefits, i.e., provision of a minimum standard of living for the poor and disabled, will be served."), *aff'd in part, rev'd in part*, 725 F.2d 1489 (9th Cir.1984), *cert. granted, case vacated and remanded*, —— U.S. ——, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Leschniok v. Heckler*, 713 F.2d 520, 524 (9th Cir.1983) ("We fail to comprehend the Secretary's argument that financial compensation at some future date should the claimants survive and prevail, mitigates the hardship which is visited upon claimants and their families each and every day."); *Caswell v. Califano*, 583 F.2d 9, 14 (1st Cir.1978) ("It is simply not true that a claimant for disability benefits, not infrequently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive well over a year without."); *Tustin v. Heckler*, 591 F.Supp. 1049 (D.N.J.), *vacated in part and remanded*, 749 F.2d 1055 (3rd Cir.1984) (plaintiffs face a "future injury of uncertain date and incalculable magnitude" if the terminated benefits are not restored).

■ The Secretary does not argue strongly that the balance of hardships tips in her favor. She contends that preliminary injunctive relief will impose a tremendous administrative burden, but this argument is effectively mooted since the court has provided the Secretary with an opportunity to participate in drafting a joint proposed order specifically so that she may suggest time limits that will not be unduly burdensome for, *inter alia*, notifying class members, reopening cases and holding hearings. Even if the Secretary were to argue that the administrative expense were prohibitive, the court would not be persuaded to deny preliminary relief. "Faced with such a conflict between financial concerns and preventable human suffering, we have little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir.1983) (emergency motion for partial stay pending appeal in *Lopez, supra*, 572 F.Supp. 26, denied).

The public good strongly favors the issuance of an injunction ensuring that individuals who are disabled are not summarily denied by virtue of the Secretary's applications of an arbitrary and decidedly illegal threshold severity test. Thus, at least two other courts have issued preliminary injunctions in class action challenges to these severity regulations. *Dixon v. Heckler*, 589 F.Supp. 1494 (S.D.N.Y.1984); *Smith v. Heckler*, 595 F.Supp. 1173 (E.D.Cal.1984).

Plaintiffs argue additionally that preliminary injunctive relief is necessary in light of the Secretary's policy of nonacquiescence in judicial decisions interpreting the Act. *See Stieberger v. Heckler*, 615 F.Supp. 1315 (S.D.N.Y.1985); *Kuehner v. Schweiker*, 717 F.2d 813, 816 (3rd Cir.1983). The Secretary contends that her new SSR contradicts any suggestion of nonacquiescence since it specifically announces the Secretary's intent to comply with decisions of the Third and Fifth Circuits. However, as discussed at length *supra*, the new SSR in no way complies with either the letter or the spirit of *Baeder*. Accordingly, the court finds that the new SSR represents a policy of constructive nonacquiescence and agrees with plaintiffs that preliminary injunctive relief is strongly warranted.

---

**9.** Defendant argues that in contrast to people whose benefits are terminated, people whose initial applications are denied suffer no financial hardship because they never received any benefits and thus never relied on them as a source of income. The court rejects this argument for the reasons set forth in the body of this opinion.

IV. *Class Certification*

A. *Fed.R.Civ.P. 23*

Plaintiffs move to certify the proposed class under Fed.R.Civ.P. 23(a) and 23(b)(2) and have shown that they satisfy the four requirements—numerosity, commonality, typicality and adequacy of representation—of Rule 23(a).

■ The proposed class would be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Statistics for the fifteen months since July 26, 1984 (the date the class opens) are not part of the record, but since 1979, when the non-severe impairment regulations were promulgated, the percentage of denials at this second step has hovered around 40 percent.[10] In the fiscal year 1982, for example, the most recent year for which the parties have supplied numerical data, the Secretary made nearly 900,000 initial disability determinations on Title II claims, of which 72 percent were denied. Forty percent of these denials—261,000—were based on a finding that the claimant suffered from no severe medical impairment, so vocational factors were never considered. The court takes judicial notice of the fact that approximately three percent (3%) of the nation's population lives in New Jersey.[11] Therefore, in fiscal year 1982, it is probable that more than 7,000 disability applicants were denied because the Secretary applied the regulation the Third Circuit invalidated in *Baeder*. While plaintiffs have not identified all members of the proposed class—indeed, they cannot, and part of the requested injunctive relief will direct the Secretary to identify class members—they have satisfied the numerosity requirement. *See Lugo v. Heckler,* 98 F.R.D. 709, 714 (E.D.Pa.1983); *Johnson v. Heckler,* 593 F.Supp. 375 (N.D.Ill.1983), *motion to alter or amend order denied,* 607 F.Supp. 875 (1984).

In considering the requirements of commonality, typicality and adequacy of representation, the court looks first at the named plaintiffs and how the challenged policies have affected them. Wilson, a junkyard laborer for 40 years, suffers from, *inter alia,* asthma, chronic obstructive lung disease, and osteoarthritis. The ALJ called Wilson's asthmatic condition a non-exertional environmental restriction, despite evidence that Wilson's past work environment aggravated his pulmonary ailments. Wilson Aff. The ALJ never considered the severity of Wilson's impairments in combination, never determined his residual functional capacity, and denied his claim summarily at the second step of the sequential evaluation. The Appeals Council upheld the ALJ's decision and Wilson's judicial appeal has been pending in this court since 1983.

Although plaintiff Mary Christopher's initial denial was recently reversed by the Appeals Council on other grounds, her appeal was pending at the time the motion for class certification was filed. As discussed *supra,* she may continue as a proper class representative. The ALJ found that Christopher had degenerative joint disease of the neck but that she did not suffer from a severe impairment and was therefore not eligible for disability benefits, despite a consulting physician's report finding a radiculopathy from the cervical area to the left shoulder and arm.[12] Christopher had worked for 40 years as a sewing machine operator and stopped in 1982 because she could no longer lift her left arm. Regardless of the testimony of a vocational expert to that effect, the ALJ never considered vocational factors or determined Christopher's residual functional capacity. *See* Christopher Aff.

---

**10.** House Comm. on Ways and Means, 98th Cong., 1st Sess., Background Material and Data on Major Programs Within Jurisdiction of the Committee on Ways and Means, at 79 (Table 3) (Comm. Print Feb. 8, 1983).

**11.** New Jersey has 17 of the nation's 538 electoral votes, which are distributed based on census data. Seventeen is approximately three percent of 538.

**12.** "Radiculopathy" is a disease of the nerve roots. *Dorland's Illustrated Medical Dictionary* (25th Ed.1974).

Like members of the class they propose to represent, the named plaintiffs were denied benefits because the Secretary applied the regulation which the Third Circuit invalidated in *Baeder.* They seek the opportunity to have the final determination of disability focus on all relevant factors mandated by the Act. There is no potential for conflict among class members because all of them want their individual cases to be evaluated fairly, with all relevant factors taken into account. Furthermore, plaintiffs' counsel has considerable experience in Social Security litigation and will ably represent the interests of the class. Declaration of Richard Yaskin, October 1, 1984, ¶¶ 14–16. Accordingly, the commonality, typicality and adequacy of representation requirements of Fed.R.Civ.P. 23(a) are satisfied.

Plaintiffs have defined the class by reference to the scope of the Secretary's challenged policies. It is clear that the Secretary has acted or refused to act on grounds generally applicable to the class, thereby making injunctive or declaratory relief with respect to the class as a whole appropriate. Fed.R.Civ.P. 23(b)(2). *See Alliance to End Repression v. Rochford,* 565 F.2d 975, 978 (7th Cir.1977).

Two other district courts have recently certified class actions which challenged the severity regulations at issue here. *Dixon, supra,* 589 F.Supp. 1494 (S.D.N.Y.1984); *Smith, supra,* 595 F.Supp. 1173. District judges in New Jersey have also certified class actions challenging other applications of the Secretary's regulatory authority. *Tustin, supra,* 591 F.Supp. 1049; *Rivera v. Heckler,* 568 F.Supp. 235 (D.N.J.1983) (Lacey, J.). *See generally Kuehner v. Schweiker,* 717 F.2d 813 (3rd Cir.1983).

**B.** *The Jurisdictional Requirement of § 405(g)*

A class may be certified under the Act only if each prospective class member individually satisfied the jurisdictional requirements of 42 U.S.C. § 405(g).[13] *Califano v. Yamasaki,* 442 U.S. 682, 701, 704, 99 S.Ct. 2545, 2559, 61 L.Ed 2d 176 (1979); *Mathews v. Diaz,* 426 U.S. 67, 71 n. 3, 96 S.Ct. 1883, 1887, 48 L.Ed.2d 478 (1976); *Weinberger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975).

Section 405(g) provides that a claimant may obtain judicial review only after the Secretary renders a "final decision" on his application for benefits after a hearing to which he was a party. Pursuant to her rulemaking authority under 42 U.S.C. § 405(a), the Secretary has determined that a final decision is rendered on a claim under Title II or Title XVI only after the Appeals Council has either issued a decision or denied a claimant's request for review. *See, Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Salfi, supra,* 422 U.S. at 765, 95 S.Ct. at 2466–67; 20 C.F.R. §§ 404.900(a)(5), 404.-981, 416.1400(a)(5), 416.1481. In short, the Secretary's regulations require full exhaustion of administrative remedies prior to judicial review.[14]

As certified, the class included "[a]ll persons in the State of New Jersey who have filed or will file applications for disability benefits ... and whose benefits have been or will be denied or terminated based upon a finding of no severe impairment...." Order of October 9, 1985. The cutoff date for the class as now defined is July 26, 1985, so claimants who received decisions of the Secretary before that date and who failed either to file a complaint in federal district court or to appeal to the next ad-

---

**13.** The jurisdictional requirements of § 405(g), which refers to Title II claims, are incorporated in 42 U.S.C. § 1383(c) for Title XVI claims.

**14.** The exhaustion requirement of § 405(g) consists of a waivable element, discussed in the body of the opinion, and a nonwaivable requirement that a "claim for benefits shall have been presented to the Secretary." *Ringer, supra,* 104

S.Ct. at 2023, *citing Eldridge, supra,* 424 U.S. at 328, 96 S.Ct. at 899. Plaintiffs in this action have satisfied the presentment requirement by virtue of their applying for benefits, in the case of class members whose claims were denied, or their having applied for and received benefits in the past, in the case of class members whose benefits were terminated.

ministrative level within 60 days after receiving such decision.[15] The court notes as a preliminary matter that it may see fit to broaden or narrow the temporal scope of the class in the future.

The class includes a subclass of disability applicants who may have received a decision of the Secretary on or after July 26, 1984 and failed to appeal it within the requisite 60 days. Defendant argues strenuously that the failure to exhaust administrative remedies automatically bars those persons from inclusion in any class which may obtain injunctive relief. However, members of this subclass are properly included in the certified class because they fall within a judicially created exception to the exhaustion requirement of section 405(g).

The Supreme Court has held that the Secretary may waive the exhaustion requirement and that the courts are also empowered to do so in appropriate circumstances. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Diaz, supra,* 426 U.S. at 76, 96 S.Ct. at 1889–90. In permitting certification of a class of Title XVI recipients whose benefits had been reduced or terminated, the Third Circuit held that exhaustion of administrative remedies could be properly waived by the court if the legal issue presented was statutory and if the Secretary had assumed a fixed and final position. *Liberty Alliance of the Blind v. Califano,* 568 F.2d 333, 345–46 (3rd Cir.1977), *citing Eldridge, supra.* More recently, the Third Circuit applied *Liberty Alliance* to find § 405(g) jurisdiction despite the lack of exhaustion of remedies by members of a proposed class. *Kuehner v. Schweiker, supra.* The majority looked at whether the Secretary had taken a fixed and final position, thereby rendering exhaustion futile. A concurring opinion by Judge Becker observed that the Supreme Court's decisions in *Eldridge* and *Salfi* had identified two further criteria: (1) the unexhausted claim must be at

least substantially collateral to the question of whether plaintiffs should continue to receive disability benefits; and (2) requiring exhaustion must impose substantial hardship on, or cause irreparable harm to, plaintiffs. *Kuehner, supra,* 717 F.2d at 822.

The Secretary contends that her position on the issue of non-severe impairment is fluid, not "fixed and final," and points to her new SSR to prove her point. But the new SSR does not represent changes in the Secretary's stance toward disability claimants. It is merely a glib reformulation of policies which have been implemented for several years. In these circumstances, it should be futile to require all members of the identified subclass to exhaust administrative remedies, despite the Secretary's protestations that certain claimants might be granted benefits were they to pursue administrative appeals.

In addition, plaintiffs have demonstrated that they will suffer irreparable harm for which *post hoc* relief would be inadequate. *See supra. Compare Dixon, supra,* at 1501.

■ Defendant argues that the unexhausted claims are not substantially collateral but are in fact identical to plaintiffs' claims for benefits. Even if the Secretary's argument is correct, the court believes that waiver of exhaustion is nonetheless appropriate because plaintiffs have clearly satisfied the requirements of futility and irreparable harm. "[T]he core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable." *Eldridge, supra,* 424 U.S. at 331, n. 11, 96 S.Ct. at 900–01, n. 11. The Supreme Court's approach is practical and its decisions do not establish whether each of the individual relevant factors must be present before a court may waive exhaustion. *City of New York v. Heckler,* 742 F.2d 729,

---

**15.** The class actually includes claimants who received final administrative decisions within 65 days of the filing of the instant motions since the regulations presume that a decision is received within five days of mailing. 20 C.F.R. § 422.210(c) (1981).

736 (2nd Cir.1984), *cert. granted,* —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985), *citing Eldridge, supra,* and *Ringer, supra.*[16] Fairness and justice dictate that the exhaustion requirement should be deemed waived for members of the proposed class. *Compare Smith v. Schweiker,* 709 F.2d 777, 780 (2nd Cir.1983).

## V. *Conclusion*

For all the foregoing reasons, the court will grant plaintiffs' motions for preliminary injunctive relief and class certification. An order setting forth both the scope of relief and the definition of the class will be entered.

## SUPPLEMENTAL OPINION ACCOMPANYING ORDER

On October 9, 1985, this court certified a class of New Jersey residents whose claims for disability benefits under the Supplemental Security Income ("SSI") and Old Age Survivor and Disability Insurance ("OASDI") programs have been or could be denied or terminated since July 26, 1984 solely on the basis that their medical impairments are not severe. The court also granted a preliminary injunction barring the Secretary of Health and Human Services ("Secretary") from applying the severity regulation, 20 C.F.R. § 404.1520(c), to present and future claims for benefits under Title II and Title XVI of the Social Security Act, as amended, 42 U.S.C. § 301 *et seq.,* and directing her to reopen past claims that were denied or terminated by application of that regulation. The court instructed the parties to confer and submit a joint proposed order incorporating the timetable and scope of injunctive relief.

After issuance of the court's opinion, *Wilson v. Heckler,* 622 F.Supp. 649 (D.N.J.

1985), the parties submitted a partial joint proposed order for implementing preliminary relief. The parties could not agree on several points, so they have submitted separate versions of proposed paragraphs, along with supplementary letter briefs. The court has considered the options and arguments presented by the parties and is filing this supplemental opinion in order to clarify certain provisions of the accompanying final order.

Plaintiffs have asked the court to impose mandatory time limits on the Secretary with respect to several prescribed actions: identification of class members (Order, ¶ 2);* notification of class members (¶ 3, ¶ 8(a) ); completion of sequential evaluations of disability, including scheduling hearings (Plaintiffs' Proposed ¶¶ 4, 5); and issuance of compliance instructions (¶ 10). While the Secretary has submitted her estimates of reasonable time frames, which in every instance are longer than those proposed by plaintiffs, she maintains that all such mandatory deadlines are precluded by the Supreme Court's opinion in *Heckler v. Day,* 467 U.S. 104, 104 S.Ct. 2249 (1984).

In *Heckler v. Day,* the Court invalidated a statewide injunction issued by a district court which required the Secretary, *inter alia,* to issue reconsideration determinations within ninety (90) days of requests for reconsideration and to conduct hearings within ninety (90) days of requests for hearings. The Court held that because Congress repeatedly considered and rejected imposing mandatory deadlines on agency adjudication of disputed disability claims under Title II of the Social Security Act, "it would be an unwarranted judicial intrusion into this pervasively regulated area for federal courts to issue injunctions imposing

---

**16.** The Secretary urges this court to reserve any decision on the waiver of exhaustion issue in light of the Supreme Court's decision to grant the Secretary's petition for certiorari in *City of New York v. Heckler.* The Supreme Court granted certiorari on October 7, 1985, only two days before this court heard argument and issued an order certifying the class and granting preliminary relief. Given the size of the Supreme Court's docket and the inherent delays in

the appellate process, that opinion could conceivably not issue for at least a year. These motions have already been pending for over a year and the court cannot in good conscience postpone its decision any longer.

* Except where noted, all references to numbered paragraphs are to the accompanying order.

deadlines with respect to future disability claims." 467 U.S. ——, 104 S.Ct. at 2258. The Court's 5-4 decision made clear that it applied to injunctions issued in class actions and that injunctive relief would still be proper to remedy individual violations of 42 U.S.C. § 405(b). *Id.* at n. 33.

The Circuit Courts of Appeals which have applied *Heckler v. Day* have generally followed its proscription of setting time limits on the Secretary's administrative process. *See, e.g., Telecommunications Research & Action v. F.C.C.,* 750 F.2d 70, 81 n. 44 (D.C.Cir.1984) (granting injunctive relief in individual case); *Sierakowski v. Heckler,* 748 F.2d 115 (2nd Cir.1984) (invalidating 165 day deadline for deciding Medicare appeals); *Hyatt v. Heckler,* 757 F.2d 1455, 1459 (4th Cir.1985) (vacating injunction against Secretary's policy of nonacquiescence). *But see Avery v. Sec'y of Health and Human Services,* 762 F.2d 158, 164, 165 (1st Cir.1985) (upholding mandatory time limits under 1984 Reform Act in absence of countervailing legislative history and demonstrable burden).

In the case at bar the court is faced with two distinct types of time limits. Plaintiffs seek to require the Secretary to "make all good faith efforts to complete the sequential evaluation of disability within four weeks of the date a class member's case file ... is received ..." (Plaintiffs' Proposed ¶ 4(a)(3) ); conduct redetermination hearings within forty-five (45) days of identification of class members entitled to have their claims reopened (Plaintiffs' Proposed ¶ 4(b)); and conduct hearings in cases of class members whose claims have been remanded from federal court within seventy-five (75) days of notice of remand or eighty-five (85) days of entry of the remand order, whichever is earlier (Plaintiffs' Proposed ¶ 4(b) ). These proposed deadlines directly contradict the holding of *Heckler v. Day* because they would impose time limits on the Secretary's internal administrative procedures. "In light of Congress' continuing concern that mandatory deadlines would subordinate quality to timeliness, and its recent efforts to ensure the quality of agency determinations, it hardly could have contemplated that courts should have authority to impose the very deadlines it repeatedly has rejected." *Heckler v. Day, supra,* 467 U.S. ——, 104 S.Ct. at 2257.

Accordingly, the court will not impose the deadlines which plaintiffs proposed and to which defendant agreed. Instead, the accompanying order instructs the Secretary to use her "best efforts" to obtain, update and review vocational information and complete sequential evaluations within suggested time frames which the parties have already agreed are reasonable. Since compliance with the time frames is hoped for, but not required, the court has deleted proposed provisions that would tally cases received by the New Jersey Division of Disability Determinations ("NJDDD") in any given week as received in the following week if they exceeded a certain number. Order, ¶ 4(a). The order further directs the Secretary to use her best efforts to schedule hearings promptly and hold them within a reasonable period of time. Order, ¶ 4(b).

The other time limits proposed by plaintiffs and incorporated into the accompanying order relate not to the Secretary's procedures but to implementation of preliminary injunctive relief. Timetables for identifying class members and notifying them of their status do not conflict with *Heckler v. Day, supra. See Dixon v. Heckler,* 83 Civ. 7001 (MEL), Letter Opinion of Lasker, J. (S.D.N.Y. July 20, 1984) (discussing proposed order to be issued under *Dixon v. Heckler,* 589 F.Supp. 1494 (S.D.N.Y.1984) ). Accordingly, the court will require the Secretary to identify all class members within 120 days and notify them within twenty-one (21) days of such identification. Order, ¶¶ 2, 3. Plaintiffs propose that the Secretary be required to notify all class members within ninety-five (95) days. The Secretary argues that plaintiffs' proposed time frame would impose an undue administrative burden on the agency which could be alleviated if an additional twenty-five (25) days were granted. The court is mindful that the agency must issue benefit checks early in December due to the holiday mail

crunch and that the Secretary is already working to comply with other court orders. The Secretary states that 120 days "represents a realistic deadline which SSA will be able to meet," Defendant's Letter Brief, Nov. 6, 1985 at 3, and the court will hold the Secretary to her proposal.

The parties agreed that twenty-one (21) days was an appropriate time frame for notification, but clashed over whether the Secretary should be required to notify the claimant's representative as well as the claimant. The Secretary's own regulations provide that notice "... of any administrative action ..." will be sent to a claimant's representative. 20 C.F.R. § 404.1715. In the face of the regulation's plain language, the Secretary's arguments that such a requirement would overburden her administrative staff are unavailing.

The accompanying order will apply to claimants whose claims are currently in federal court as well as to those with claims pending at various administrative levels. The class encompasses both categories and the court believes claimants with claims pending in federal court are fully entitled to notification of their status as potential members of the certified class, in addition to any and all other rights granted to other class members. Any objection that such federal cases should not be subject to the proposed hearing deadlines is rendered moot by the court's decision, pursuant to *Heckler v. Day, supra,* not to impose deadlines at that stage.

The Secretary and plaintiffs propose different timetables for issuing instructions for compliance with the accompanying order. Plaintiffs suggest that such instructions should be issued within fifteen (15) days of the date of the accompanying order. The Secretary contends that the delays inherent in the printing process make forty-five (45) days a more realistic projection. The printing process alone, the Secretary claims, can take as long as twenty-one (21) days. The court believes that the Secretary should be able to draft and review instructions within twenty-one (21) days and disseminate typewritten copies of those instructions by mail or telecopier pending issuance of the final, printed version. Therefore, the court will order that the Secretary disseminate instructions in provisional form within twenty-one (21) days and circulate a final, printed version within forty-five (45) days. Order, ¶ 10.

The final issue on which the parties could not agree is monitoring. The basic monitoring information requested by plaintiffs is essential to track the Secretary's compliance efforts. Particularly in light of the court's inability to impose mandatory deadlines on the hearing process, plaintiffs' counsel must be supplied with frequent and accurate reports on the status of certain claims and the Secretary's progress. The court must rely on plaintiffs' counsel to alert it to any instances of apparent noncompliance with the accompanying order. For these reasons, the court will adopt the timetable suggested by plaintiffs, modified to reflect the court's adoption of defendant's 120 day limit for notifying potential class members.

The accompanying order will be entered and should be interpreted in light of this opinion.

## ORDER CERTIFYING CLASS AND GRANTING PRELIMINARY INJUNCTION

This matter being brought before the court by Richard E. Yaskin, Esquire, of Jacobs & Schwalbe, P.C., attorneys for the plaintiff class, and the court having considered the submissions and arguments of the parties:

It is on this 14th day of November, 1985, hereby **ORDERED** that plaintiffs may maintain this action as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2), the class being defined as follows:

All persons in the State of New Jersey who have filed or will file applications for disability benefits under Title II and/or Title XVI of the Social Security Act, as amended, and whose benefits have been or will be denied or terminated based upon a finding of no severe impairment pursuant to the policies set forth in 20

C.F.R. §§ 404.1520(c) and .1521, 416.-920(c) and .921 (1983), and Social Security Ruling 82–55 (1982).

The plaintiff class does not include, at this time, any such persons who received decisions of the Secretary on or before July 25, 1984 and who failed either to file a complaint in federal district court or to appeal to the next level of administrative review within 60 days after the date of receipt of such decision.

For purposes of determining class membership, the term "person in the State of New Jersey" is defined as an individual who was domiciled in the State of New Jersey at the time of his or her most recent administrative decision.

For purposes of determining whether disability was denied or terminated based on a finding of no severe impairment, the rationale of the final agency denial shall be controlling *except* that the rationale of the Administrative Law Judge shall be controlling where the Appeals Council denies review and has not initiated review on its own motion pursuant to 20 C.F.R. § 404.969 (1983).

It is **FURTHER ORDERED** that plaintiffs' motion for a preliminary injunction is **GRANTED** and that, pending a final determination of this action, defendant, her agents, servants, employees and their successors:

1. Are enjoined from denying or terminating Social Security Disability or Supplemental Security Income benefits due to the policies set forth in 20 C.F.R. §§ 404.-1520(c) and .1521, 416.920(c) and .921 (1983), and Social Security Ruling 82–55 (1982); and

2. Shall immediately commence identification of all members of the plaintiff class. Defendant shall complete identification of the members of the class within 120 days of the date of this order; and

3. Shall send to each class member whose application for benefits was denied and his/her representative, a copy of the notice appended hereto as Attachment "A". Notification of class members shall be completed within twenty-one (21) days of the date defendant identifies the class member; and

4. Are directed to reopen the applications of all class members whose applications for benefits have been denied or terminated by the Secretary at any stage of the administrative process, since July 26, 1984 and thereafter, and to redetermine those applications without reference to the threshold severity test, provided that any action pending in federal court based upon the denial of a class member's application for benefits has been remanded to the Secretary for redetermination.

(a) With respect to class members whose applications for disability benefits have been denied at the initial administrative stage or on reconsideration and who have not requested review by an Administrative Law Judge:

(1) Defendant shall forthwith obtain information on the individual's vocational history, including completion of Form SSA–3369 if appropriate or updating the prior vocational history on file. Defendant shall use its best efforts to obtain or update vocational information within one week after the class member responds to the notice appended hereto as Attachment "A" or is otherwise determined to be a class member.

(2) Defendant shall forward the class member's file to the New Jersey Division of Disability Determinations ("NJDDD") for a new initial determination within three days of (i) obtaining appropriate vocational information pursuant to subparagraph (a)(1), or (ii) receipt of the claims folder by the District Office with jurisdiction over the claim, whichever is later. Defendant shall make its best efforts to deliver to the District Office fifty percent (50%) of the claims files within two weeks, sixty-five percent (65%) of the claims files within three weeks and eighty percent (80%) of the claims files within thirty days after the class member responds to Attachment "A" or is determined to be a class member. Defendant shall begin reconstructing the files of all class members whose claims files are not

received by the appropriate District Office within four months after the class member responds to Attachment "A" or is determined to be a class member, whichever is earlier.

(3) Defendant shall make all good faith efforts to complete the sequential evaluation of disability within four weeks of the date a class member's case file and completed Form SSA–3369 are received by NJDDD unless the class member submits new medical evidence, requests a full redevelopment of evidence and reevaluation of disability, or defendant determines that a full redevelopment is required. Nothing in this order shall preclude defendant from employing the quality assurance process set forth in 42 U.S.C. § 421(c)(3) in each individual class member's case to the extent defendant seems appropriate.

(b) In conducting the redetermination of those applications in which a hearing has been held or in which a request for hearing is pending, defendant shall conduct a hearing before an Administrative Law Judge unless a determination of entitlement can be made on the basis of the record. The Secretary shall use her best efforts to schedule such hearings promptly and hold them within a reasonable period of time.

5. With respect to those class members who have actions pending in federal court and either have informed the Secretary that they want their case remanded to the Secretary for a reevaluation or have failed to so inform the Secretary by responding to the notice appended hereto as Attachment "A" within thirty (30) days of the date of the notice, the Secretary shall move the court for or otherwise agree to a remand of the case; and

6. Shall provide to any person who presents him/herself in person, by telephone or by letter to the Social Security Administration for relief under this order and, at the time of such presentment provides his/her name, Social Security number, telephone number and current address, a copy of the notice appended hereto as Attachment "B", stamped by the Social Security Administration personnel to indicate the date of his/her presentment. A copy of the notice shall be placed in that person's file if that person in fact has applied for or been terminated from benefits. Upon such presentment, defendant shall within thirty (30) days, determine whether such person is a class member and shall provide a written rationale for such determination; and

7. Shall reproduce, in both the English and Spanish languages, the notice appended hereto as Attachment "C" as a 17 inch by 22 inch poster and cause equal numbers of English and Spanish language copies of such poster to be prominently displayed in all Social Security Administration field, district, and hearing offices in the State of New Jersey to which the public has access, shall supply plaintiffs' attorneys with fifty (50) copies of said poster in the English language and twenty-five (25) copies of said poster in the Spanish language; and

8. (a) In the event a class member fails to respond to notice "A" and said notice is not returned by the Post Office, defendant shall make all good faith efforts to send a final notice to the class member advising him or her of the availability of relief under this order within seventy-five (75) days of the date notice "A" is sent. Said final notice shall contain a form which will allow the class member to indicate whether he or she intends to pursue the relief provided for by this order and shall be accompanied by an addressed, postage-paid envelope. Upon sending the final notice, defendant shall have no further obligation to contact the class member.

(b) In the event that a notice sent to a class member is returned by the Post Office, defendant shall follow standard operating procedures in the Program Operations Manual (POMS, DI 00504.047) to ascertain the individual's current address or whereabouts for purposes of sending a final notice. If still unsuccessful upon completing these efforts, defendant may cease efforts to locate the class member. Should the class member come to defendant's attention, defendant shall provide the

class member with all the rights under the order for class members who respond to Attachment "A"; and

9. Shall immediately issue instructions to the Social Security offices in the State of New Jersey, to the Office of Hearings and Appeals, to the Appeals Council, to the Regional Office, having jurisdiction over New Jersey, and to the New Jersey Division of Disability Determinations, requiring compliance with paragraph (1).

10. Shall, within twenty-one (21) days of the date of this order, issue provisional instructions for compliance with this order, including procedures to be used in identifying class members, responding to inquiries from asserted class members and their representatives, for reevaluating initial claims of plaintiff class members who have been denied or terminated at the initial administrative state or on reconsideration. Such provisional instructions shall be disseminated in typewritten form by mail or telecopier. Final printed instructions shall be issued within forty-five (45) days of the date of this order, but they shall not differ in content from the provisional instructions; and

11. Shall immediately provide plaintiffs' counsel with copies of all memoranda, notices, instructions, directives and like documents issued to effect compliance with this order as those documents are issued; and

12. Plaintiffs seek the following reports to be provided within the time frames specified:

(a) An alphabetized list of the names and Social Security numbers of class members who have been identified (within 130 days and supplemented every forty-five (45) days until defendant's efforts to identify class members have ceased); and

(b)–(1) An alphabetized list of the names and Social Security numbers of persons who cannot be notified because their notices were returned by the Post Office (within 155 days and supplemented every forty-five (45) days until defendant's efforts to notify class members

pursuant to Paragraph 8(b) have ceased); and

(2) An alphabetized list of the names and Social Security numbers of persons who have been notified, but failed to respond to Attachment "A" (within 175 days and supplemented every forty-five (45) days until the District Office ceases to maintain an active file due to the class member's failure to respond to, or negative response to, the final followup notice of Paragraph 8(a); and

(c) The number of class members identified (within 130 days and supplemented every forty-five (45) days until defendant's efforts to identify class members have ceased); and

(d) The number of class members sent Attachment "A" and the number responding to such notice (within 175 days and supplemented every forty-five (45) days until defendant's efforts to contact class members who are sent Attachment "A" have ceased); and

(e) The number of cases ordered forwarded to NJDDD (on a monthly basis); and

(f) The number of persons who have presented themselves as potential class members, and the number determined to be class members; and the number determined not to be class members (on a monthly basis); and

(g) the number of cases that have been scheduled for hearings, and the number of hearings that have been conducted (on a monthly basis); and

(h) The number of redeterminations of applications that result in allowances and the number that result in denials (on a monthly basis); and

(i) The total number of folders that have not been located (every 45 days); and

(j) The total number of claimants who have submitted vocational and/or financial information, and whose folders have not been located (every 45 days); and

(k) The number of cases that have been placed in the quality assurance process (every 45 days); and

(*l*) The number of cases for which the quality assurance process has been completed (every 45 days); and

(m) The number of cases in which the quality assurance process resulted in an initial disagreement by defendant, with the decision of NJDDD, reported separately for denials and allowances (every 45 days).

13. The Secretary may petition the court anytime for relief from any one or more of the provisions of paragraph 12, above. Such relief will be granted upon the showing made by the Secretary and a determination of the court that the implementation of this order is proceeding smoothly and that the information called for in the particular provision or provisions from which the Secretary seeks relief is no longer needed or upon a showing and a determination of the Court that such relief is otherwise appropriate.

14. Nothing in this order shall be construed as precluding members of the plaintiff class from obtaining greater relief on alternative grounds within the sequential evaluation process. Class members shall retain all rights to administrative and judicial review of decisions made as a consequence of this order. Nothing in this order shall be construed as precluding class members who choose to proceed with their individual court cases from seeking preliminary relief in those cases.

### Attachment A

SOCIAL SECURITY DISABILITY AND SUPPLEMENTAL SECURITY INCOME APPLICANTS, THEIR REPRESENTATIVES AND REPRESENTATIVE PAYEES

Date: _____

Based on our review of your file, it appears that you may have been denied benefits because we found that your medical condition was not severe. A federal court has temporarily ordered us not to deny benefits on that ground and to reopen and redetermine certain applications denied on that ground.

If we review your case, we will need more information from you. Therefore, you should go to or telephone your local Social Security Administration office, and be prepared to give them information about your employment history. If you go to your local Social Security Administration office in person, please take this notice with you.

If we redetermine your application, our decision will be based upon the medical evidence that we now have in our file, unless you give us additional medical evidence. If you believe that your medical condition has changed since we last evaluated your claim, you should make a special effort to obtain and give us additional medical evidence from your doctor(s) and any clinics or hospitals where you have received treatment.

IT IS OF GREAT IMPORTANCE THAT YOU CONTACT YOUR LOCAL SOCIAL SECURITY ADMINISTRATION OFFICE WITHIN FORTY-FIVE (45) DAYS SO THAT WE MAY REDETERMINE YOUR CASE.

Attachment A (second page)

### PERSONS WITH CASES IN FEDERAL COURT

If you have an action pending in federal court based upon the denial of your application, we cannot redetermine this application unless and until the court sends your case back to us. You may alternatively have the right to continue with your court action. We request that you indicate below whether you want to send your case back to us for redetermination.

Please place your name, signature, Social Security number, address, telephone number and date in the spaces provided. Please tear off the form below and return in the enclosed addressed, postage-paid envelope within twenty (20) days after the date you receive this notice. If we do not hear from you within thirty (30) days of the date of this notice, we will assume that you do not want to continue with your court action, and we will ask the court to send your case back to us for redetermination.

------------------------------------------------------------

Date: _____

_____ I want to continue my court action. I do not want the Social Security Administration to redetermine my application for benefits.

_____ I do not want to continue with my court

action. I want the Social Security Administration to redetermine my application for benefits.

NAME: (Please Print) _____

SIGNATURE: _____

SOCIAL SECURITY NO.: _____

ADDRESS: (Please Print) _____
_____

TELEPHONE NUMBER: _____

DATE: _____

Attachment B

WILSON APPLICATION

Date: _____

This acknowledges presentment on this date of your claim for relief under *Wilson v. Heckler*, Civil Action No. 83–3771 (D.N.J. October 28, 1985). If you are a member of the class of plaintiffs in this lawsuit and are entitled to relief, the Social Security Administration will be reviewing your application if you were denied or terminated disability insurance and/or SSI benefits.

NAME: (Please Print) _____

SOCIAL SECURITY NUMBER: _____

ADDRESS: (Please Print) _____
_____

TELEPHONE NUMBER: _____

Attachment B (Back of Notice)

The class of plaintiffs in **Wilson v. Heckler**, No. 83–3771 (D.N.J. October 28, 1985), includes people who:

1. Were denied or terminated from disability insurance and/or SSI benefits on or after July 26, 1984 or who had an appeal pending on that date; and

2. Were denied or terminated because the Social Security Administration found that their medical condition was "not severe" or did not "significantly limit physical or mental abilities to do work activities."

We will decide whether you are a member of the class of plaintiffs in **Wilson v. Heckler** within about thirty (30) days of the date of this notice.

Attachment C

SOCIAL SECURITY DISABILITY AND SUPPLEMENTAL SECURITY INCOME DISABILITY APPLICANTS AND RECIPIENTS

HAS THE SOCIAL SECURITY ADMINISTRATION DENIED OR TERMINATED YOUR DISABILITY BENEFITS? IF SO, YOU MAY BE ENTITLED TO A NEW REVIEW OF YOUR CASE.

Because of a lawsuit, the Social Security Administration may have to reevaluate your application for benefits. The lawsuit affects people in the State of New Jersey who were denied or terminated benefits because the Social Security Administration found that their medical condition was not severe.

CAN YOU ANSWER YES TO
THESE QUESTIONS?

1. Were you denied or terminated from disability benefits on or after July 26, 1984, or did you have an appeal pending within the Social Security Administration or in federal court on that date?

2. Do you think your benefits were denied or terminated because the Social Security Administration found that your medical condition was "not severe" or because it found that your medical condition did not "significantly limit your physical or mental abilities to do basic work-related activities"

If you said yes to both of the above questions, don't delay. Contact your local Social Security office immediately. Be prepared to give them your name, Social Security number, current address and telephone number. Ask for a **Wilson Application.**