John WILSON and Mary Christopher, on their own behalf and on behalf of others similarly situated, Plaintiffs,

v.

Hon. Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.* ·

Civ. A. No. 83–3771(SSB).

United States District Court, D. New Jersey.

March 19, 1990.

Original Order Vacated and Amended Order Entered March 30, 1990.

* Louis W. Sullivan, M.D., succeeded Otis R. Bowen, M.D., as Secretary of Health and Human Services on March 1, 1989. The court has substituted him as the defendant in this lawsuit. *See* Fed.R.Civ.P. 25(d)(1).

Jan R. Evans, P.A. by Richard E. Yaskin, Medford, N.J., for plaintiffs.

Samuel A. Alito, Jr., U.S. Atty. by Peter G. O'Malley, Sp. Asst. U.S. Atty., Newark, N.J., (Barbara Lewis Spivak, Deputy Chief Counsel, Sandra M. Grossfeld, Asst. Re-gional Counsel, Dept. of Health and Human Services, Office of Gen. Counsel, New York Regional Office, New York City, of counsel), for defendant.

## OPINION

BROTMAN, District Judge.

On March 29, 1989, this court entered an order to show cause why plaintiffs' complaint in this class action lawsuit should not be dismissed in light of the Supreme Court's recent decision in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), which held that the Secretary's severity regulation, step two of his five-step sequential evaluation process for determining whether a disability claimant is disabled (hereinafter "step two"), was facially valid.[1] Plaintiffs challenge the validity of step two as applied to existing class members. Plaintiffs also argue that the size of the class should be increased to include all claimants denied under step two since 1976. Plaintiffs claim that the sixty day limitation on appealing an adverse decision of the Secretary should be equitably tolled because the Secretary conducted a clandestine policy to misapply step two. Additionally, plaintiffs request that the court order the Secretary to readjudicate all claims between December 1978 and August 20, 1980 that allege more than one impairment due to the Secretary's clandestine policy refusing to consider "not se-

---

1. The Secretary uses a five-step process to determine whether a claimant is disabled and therefore eligible for benefits. Step one renders ineligible a claimant engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b); 416.-920(b). Step two, at issue here, renders ineligible a claimant without a medically severe impairment or combination of impairments. *Id.* §§ 404.1520(c); 416.920(c). Step three determines whether a claimant's impairment is equivalent to a listed impairment that the Secretary presumes precludes substantial gainful activity. *Id.* §§ 404.1520(d); 416.920(d). Step four determines whether the impairment prevents performance of past work. *Id.* §§ 404.-1520(e); 416.920(e). Step five determines whether a claimant can perform other work in the national economy in view of his age, education, and work experience. A claimant is eligible for disability benefits if he or she sur-vives steps one and two and either is presumed disabled at step three or cannot perform either past work (step four) or other suitable work (step five).

Step two is the Secretary's severity regulation. That regulation provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

*Id.* §§ 404.1520(c); 416.920(c). The Secretary has defined certain terms in this regulation in sections 404.1520 and 416.920. *See generally Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987); *Wilson v. Sullivan*, 709 F.Supp. 1351, 1353 n. 1 (D.N.J.1989)

vere" impairments in combination during this period.

At this time, plaintiffs must show cause why the action should not be dismissed under *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Also before the court is plaintiffs' motion for summary judgment and in the alternative to compel discovery. For the reasons stated herein, this court finds that plaintiffs are not entitled to further discovery at this late date. The court also concludes that plaintiffs are not entitled to summary judgment on their claims that the Secretary implemented a harsher standard than permitted by *Yuckert* as evidenced by the increased number of federal returns or as evidenced by the misapplication of twenty examples. The court does not reach the issue that these policies were clandestine.

The court finds, however, that plaintiffs are entitled to summary judgment on their claim that the Secretary used its illegal noncombination policy between 1978 and 1980 and that the policy was clandestine. The court will, therefore, order retroactive expansion of the class to include those claimants denied benefits as a result of this policy between December 1978 and August 20, 1980 who had not exhausted their administrative appeals or who still had opportunity to seek review in federal district court. Plaintiffs' motion for summary judgment, therefore, will be granted in part and denied in part. Likewise, the Secretary's motion for summary judgment will be granted in part and denied in part.

## I. FACTS AND PROCEDURE

### A. *Procedural History of the Case*

This case is the oldest case on the court's docket. Although adequately detailed in previous opinions, *see Wilson v. Heckler*, 622 F.Supp. 649 (D.N.J.1985), *vacated on other grounds*, 796 F.2d 36 (3d Cir.1986), *vacated*, 482 U.S. 923, 107 S.Ct. 3205, 96 L.Ed.2d 692, *remanded*, 829 F.2d 33 (3d Cir.1987), *remanded*, 709 F.Supp. 1351 (D.N.J.1989), its elaborate procedural history is set forth herein.

Representative plaintiff John Wilson filed this action in October 1983 to appeal the Secretary's denial of his application for disability benefits pursuant to the Supplemental Security Income ("SSI") and Old Age Survivor and Disability Insurance ("OASDI") programs. Mary Christopher, whose application for disability insurance and SSI the Secretary also denied, joined Wilson in this action. Together they sought leave of court to amend Wilson's complaint so they could seek class certification and injunctive relief. Plaintiffs claimed that they represented a class of disability applicants denied benefits by operation of step two of the Secretary's sequential evaluation process, 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), and 416.921 (1983). As representatives of a class, plaintiffs challenged the regulations as invalid and sought a preliminary injunction preventing the Secretary from applying step two in disability determinations for New Jersey claimants. After the plaintiffs filed their motions for class certification and injunctive relief, but before this court decided them, the Third Circuit invalidated one of the challenged regulations, 20 C.F.R. § 404.1520(c) (1985), as inconsistent with the Social Security Act ("the Act"), 42 U.S.C. § 423(d)(1)(A) (1982 & Supp. III 1985). *Baeder v. Heckler*, 768 F.2d 547 (3d Cir.1985).

In October 1985, the court granted plaintiffs leave to file the amended complaint and, shortly thereafter, the court granted the plaintiffs' motions for class certification and injunctive relief. *Wilson v. Heckler*, 622 F.Supp. 649 (D.N.J.1985), *vacated on other grounds*, 796 F.2d 36 (3d Cir. 1986), *vacated*, 107 S.Ct. 3205, *remanded*, 829 F.2d 33 (3d Cir.1987). The court found that the plaintiffs satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Fed.R. Civ.P. 23(a) as well as the requirements of Fed.R.Civ.P. 23(b)(2), therefore, it certified a class consisting of persons in New Jersey who have filed or will file applications for disability benefits under titles II and/or XVI of the Social Security Act and whose claims will be affected by step two of the Secretary's sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520(c),

404.1521, 416.920(c), and 416.921 (1983), and in the Secretary's then-current interpretation of those regulations, Social Security Ruling ("SSR") 82–55 (1982). 622 F.Supp. at 662–62. The court's ruling limited the class to those claimants who applied for benefits after July 25, 1984, *id.* at 662, but left open the possibility of enlarging the class. *Id.* at 657–58.

Plaintiffs sought preliminary injunctive relief:

(1) prohibiting the Secretary from denying or terminating OASDI or SSI benefits due to the asserted non-severity of the claimant's impairments;

(2) directing the Secretary to initiate or restore payments of benefits to all members of the proposed class who:

(a) received decisions denying or terminating benefits that were rendered at any stage of the administrative process on or after July 26, 1984; or

(b) had pending challenges to such decisions on July 26, 1984; and

(3) directing the Secretary to reopen the applications of all class members whose applications for benefits have been denied at any stage of the administrative process since July 26, 1984 and to redetermine those applications without reference to 20 C.F.R. § 404.1520(c).

*Id.* at 654. Holding that the Secretary's interpretation of *Baeder* in a proffered new ruling, SSR 85–28, was "arbitrary and capricious for its patent disregard of Third Circuit precedent," *id.*, and "represents a policy of constructive nonacquiescence," *id.* at 655, the court granted the requested relief. *Id.* In so holding, the court did not reach plaintiffs' claim that SSR 85–28 violated the notice and comment procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b) (1982). *Id.* at 654 n. 8.

The Secretary appealed to the Third Circuit. The appeals court upheld this court's preliminary injunction, refused to consider the court's class certification decision on jurisdictional grounds, and vacated in part this court's order because it could be read to include claimants not part of the class. The Secretary sought a writ of certiorari from the Supreme Court. While the Secretary's petition for certiorari was pending, the Supreme Court held in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), that step two of the Secretary's sequential evaluation process does not contravene the Social Security Act. *Yuckert* directly undermined *Baeder,* on which this court premised its injunctive relief. The Supreme Court subsequently granted the Secretary's certiorari petition in this case and vacated the Third Circuit's decision, remanding the case for further consideration in light of *Yuckert. Bowen v. Wilson,* 482 U.S. 923, 107 S.Ct. 3205, 96 L.Ed.2d 692 (1987). In turn, the Third Circuit remanded the case to this court. *Wilson v. Bowen,* 829 F.2d 33 (3d Cir.1987).

Both representative plaintiffs' individual claims have been adjudicated. The Social Security Administration's ("SSA's") Appeals Counsel awarded benefits to Mary Christopher at some time after she and Wilson sought class certification but before the court passed on the motion. The court nonetheless found her to be a suitable class representative. *Wilson,* 622 F.Supp. at 650 n. 1. In addition, while the Secretary's petition for writ of certiorari was pending before the Supreme Court, this court granted plaintiff Wilson's motion for summary judgment in his individual case and ordered the Secretary to award benefits retroactive to May 26, 1982. The court's order stated that the decision in no way affected Wilson's status as a representative of the plaintiff class in this proceeding.

In March 1989, this court vacated the preliminary injunction of November 14, 1985, having concluded that *Yuckert* overturned *Baeder v. Heckler,* 826 F.2d 1345, 1346 (3d Cir.1987), upon which this court relied in issuing the injunction. The court denied the Secretary's motion to dismiss the suit as moot or unsuitable for class adjudication. The court rejected plaintiffs' theory that the injunction should continue in force because the Secretary violated the notice and comment provisions of the APA, 5 U.S.C. § 553(b) (1982), with respect to SSR 85–28 and certain instructional materials. The court denied plaintiffs' motion for

summary judgment that the Secretary promulgated SSR 85–28 in violation of the APA, and instead granted summary judgment for the Secretary on this issue.

Finding that plaintiffs could not establish the likelihood of success on the merits, the court also declined to continue the injunction on plaintiffs' claim that step two was invalid as applied. Noting that plaintiffs had presented some evidence of the misapplication of step two in the past, the court ordered plaintiffs to show cause why their complaint should not be dismissed in light of *Yuckert*. The court denied plaintiffs' motion for summary judgment on the issue that the Secretary will continue to misapply step two of the sequential evaluation process.

Finally, the court denied the Secretary's request that the court rule it would not expand the class to include those receiving decisions of the Secretary before July 25, 1984 and those who failed to appeal or file a complaint in federal district court within sixty days of denial. Finding the Secretary had failed to establish absence of any genuine material factual issue on the question of clandestine policy that would equitably toll the sixty day limitation, the court denied the Secretary's motion for summary judgment on the issue of retroactive expansion of the class.

### B. *Issues Currently Before the Court*

The court must now decide whether plaintiffs have shown cause why their complaint should not be dismissed. Plaintiffs maintain that step two is invalid as applied because the SSA used a harsher standard to weed out baseless claims than the *Yuckert* Court and the Social Security Act permit. Plaintiffs contend that the increased number of federal returns, that is, reversals of the state agency's determination,[2] with instructions for the state agency to deny benefits because the impairment was slight is evidence of this systematic harsher standard. The harsher standard is also seen, according to plaintiffs, in the Secretary's use of twenty "examples" of impairments that are "not severe." Plaintiffs contend that, although the examples are properly "not severe" impairments, the examples were systematically misapplied to claimants with impairments more severe than the examples. A third instance of a harsher standard is the Secretary's use of an unpublicized "noncombination" policy between December 1978 and August 20, 1980. During this period, the Secretary refused to consider "not severe" impairments in combination at step two to determine whether the claimant's combined "not severe" impairments significantly limited his or her physical or mental ability to do basic work activities.[3] Congress amended

2. The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. §§ 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the determination is reconsidered *de novo* by the state agency. 20 C.F.R. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 & Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 et seq. (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.-967 et seq., 416.1467 et seq. (1986). Once the claimant has exhausted these administrative remedies, he or she may seek review in federal district court. 42 U.S.C. § 405(g). *See generally Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed.2d 119 (1987).

All decisions by the state agency are subject to Quality Assurance Reviews by the Regional Office and by the Central Baltimore Offices of SSA. If the responsible SSA officials determine during either review that a state agency erred, the case is "returned" to the state for correction. *See Bowen v. City of New York*, 476 U.S. 467, 471, 106 S.Ct. 2022, 2025, 90 L.Ed.2d 462 (1985).

3. Plaintiffs assert that the noncombination policy appeared in SSR 82–55, which was issued and published in 1982 but had an effective date of August 20, 1980. SSA, in its answers to interrogatories, maintains that the policy is expressed in 20 C.F.R. § 404.1502 (1960), Disability Insurance State Manual ("DISM") 321B (1978), and SSR 82–55 (1982).

The United States Court of Appeals for the Third Circuit considered the validity of the Secretary's noncombination policy, formerly applied pursuant to 20 C.F.R. §§ 404.1522, 416.-922, and SSR 82–55, in *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir.1989). The noncombination policy provided that the Secretary would "consider

the Social Security Act to repudiate this policy in 1984.

Plaintiffs have moved for summary judgment or, in the alternative, to compel discovery. Plaintiffs seek to depose twelve adjudicators from New Jersey Division of Disability Determinations ("DDD") to undercover evidence of the Secretary's policy to use a harsher standard to deny disability benefits at step two. Plaintiffs have offered deposition testimony taken in the case *Dixon v. Heckler*, No. 83–7001 (S.D. N.Y.) and now seek similar testimony from New Jersey officials. Plaintiffs note that New York and New Jersey are in the same SSA Region, Region II, therefore policy initiatives in one state directly apply to disability adjudicators in the other state.

Plaintiffs also contend that the class should be expanded retroactively to include claimants whose benefits were denied under step two before July 25, 1984 because the Secretary employed a clandestine policy to use a harsher standard, thus tolling the sixty day limitation on bringing suit in federal district court. Plaintiffs contend that the Secretary clandestinely used its impermissible noncombination policy between December 1978 and August 20, 1980, therefore, equitable tolling permits plaintiffs to expand the class to include those denied benefits on this basis before the Secretary introduced its ruling prohibiting the consideration of combined impairments in 1980.

Plaintiffs also maintain that the Secretary implemented the use of the twenty examples in a clandestine manner because, on October 23, 1980, the Secretary circulated an internal memo containing the twenty examples of medical conditions considered "not severe." The twenty examples were not published until 1982 when they appeared in SSR 82–55, which became effective on August 20, 1980. Plaintiffs contend that this evidence shows the Secretary's clandestine policy.

### C. *History of the Severity Regulation*

Prior to 1978, the Secretary's regulations provided that a claimant could be denied benefits on medical considerations alone "where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities." 20 C.F.R. § 404.1502(a) (1968). This standard is often referred to as a "slight impairment" standard. *See Bailey v. Sullivan*, 885 F.2d 52, 56 (3d Cir.1989).

In 1978, the Secretary promulgated the five-step evaluation process currently in use. He reworded this regulation to provide as follows:

> Where an individual does not have any impairment(s) which significantly limits his or her physical or mental capacity to perform basic work-related functions, a finding shall be made that he or she does not have a severe impairment and therefore is not under a disability without consideration of the vocational factors.

20 C.F.R. § 404.1503(c) (1979). The Secretary subsequently revised this regulation to provide:

> If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore,

---

the combined effects of unrelated impairments only if all are severe and expected to last twelve months." 20 C.F.R. §§ 404.1522, 416.922 (1983). Congress amended the Social Security Act to explicitly repudiate the Secretary's noncombination policy. Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 4(a)(1), 98 Stat. 1794, 1800 (1984) (Secretary shall consider combined effect of all individual's impairments without regard to whether impairment, if considered separately, would be of such severity). The *Bailey* court interpreted this change as a clarification of the existing law, rather than a substantive change. 885 F.2d at 61. Finding that the statute, before its amend-

ment, required consideration of the combined effect of "not severe" medical conditions, the Third Circuit affirmed the district court's order invalidating 20 C.F.R. §§ 404.1522, 416.922 (1983) and requiring the Secretary to afford claimants who were denied on the basis of these provisions an opportunity to have their claims reconsidered. 885 F.2d at 61. The court refused, however, to equitably toll the sixty day limitation on filing an appeal in district court because the policy was openly applied. Claimants whose claims had lapsed, therefore, were not entitled to readjudication. *Id.* at 64. *See infra* at 165–167 for further discussion of *Bailey*.

not disabled. We will not consider your age, education, and work experience.

20 C.F.R. § 404.1520(c) (1980).

At the time the wording of the regulation changed from "slight impairment" to "not ... severe," the Secretary stated that the change "was not intended to alter the levels of severity for a finding of disabled or not disabled." 43 Fed.Reg. 9297 (1978); *see also id.* at 55357–58. The Secretary's avowed purpose in changing the regulations in 1978 was to streamline the five-step evaluation process by insuring that all claims in which no severe impairment existed were properly denied at step two, thus avoiding the expense of following the vocational evaluation sequence. *See* 45 Fed. Reg. 55574. Plaintiffs contend that, while making the foregoing regulatory changes, the Secretary also surreptitiously implemented a policy to use a harsher standard to evaluate severity.

### D. *Evidence of the Secretary's Harsher Standard*

As evidence of the Secretary's use of a harsher standard, plaintiffs offer:

1. The March 23, 1984 affidavit of Marvin Lachman, Director of Quality Assurance for New York's Office of Disability Determinations ("ODD"), submitted in *Dixon v. Heckler,* Civil No. 83–7001 (S.D.N.Y.). Lachman's affidavit states that, after 1976, the Secretary effected an internal policy change by greatly increasing the number of federal returns with instructions that ODD deny the claim as only having "slight" impairment;

2. The January 4, 1977 memorandum of Joseph Kelly, New York Regional Commissioner, entitled "Various Definitions of Slight Impairments," in which Kelly refers to the "confusing and arbitrary expansion of the formal sequential analysis process" and the "unwarranted extension of the process." According to plaintiffs, Kelly notes that the new procedure "does not even represent formalized policy as an adjudicative guideline";

3. The December 27, 1976 correspondence of New York ODD Director Sidney Houben, which expresses concern over the increasing number of federal returns, finding the returns did not relate to the current regulations;

4. A report prepared by SSA's Not Severe Impairment Work Group dated August 23, 1983, which sets forth the group's conclusion that, given the increase in the number of denials, the Secretary either misapplied the standard before 1975, or was misapplying it after 1975;

5. An undated study, prepared by staff within the Office of Disability, entitled "The Disability Process: The Concept of Impairment Not Severe" shows that denials increased twenty percent in 1977 and 1978 and 12.6 percent in 1979 (from 14.8 percent overall in 1977 to 57.2 percent overall in 1979);

6. Deposition testimony of Albert Harrison, the Deputy Director of the Division of Medical and Vocational Policy in SSA's Office of Disability. Harrison acknowledged problems with the use of the Secretary's twenty examples of "not severe" impairment because adjudicators evaluating the claimant's impairment would use an example when, in fact, the impairment was more severe than the example. Harrison admitted the examples were not used properly;

7. Deposition testimony of Patricia Owens, SSA's former Associate Commissioner for Disability. Owens issued a memorandum rendering SSR 82–55 obsolete, which included the twenty examples of the types of impairments considered "not severe." Owens explained that "program experience with the list of examples has been unsatisfactory";

8. The March 16, 1986 Report on the Not Severe Case Study prepared by Owens's department which concludes that in thirty-seven percent of the study cases, state agencies did not apply the "not severe" step properly.

9. Plaintiffs maintain that another study, prepared by staff within the Office of Policy and Procedures of the Office of Hearing and Appeals ("OHA"), entitled "The Sequential Evaluation of Disability: An Analysis of the Not Severe Test" demonstrates that the "not severe" stan-

dard of SSR 82–55 far exceeded the pre–1978 slight impairment standard. The study concluded that the "not severe" test articulated in SSR 82–55 was "inconsistent with pertinent case law ... and [i]s so substantially different from the medical listings and the slight impairment provision as to be without support in terms of administrative precedent." [4]

### E. Equitable Tolling Due To The Secretary's Clandestine Policy

To support their claim for equitable tolling of the sixty day limitation, plaintiffs contend that the Secretary used an unpublicized policy between December 1978 and August 20, 1980 by refusing to consider the combined effect of "not severe" impairments. Recently, in Bailey v. Sullivan, 885 F.2d 52 (3d Cir.1989), the Court of Appeals for the Third Circuit found that the policy was openly applied through 20 C.F.R. §§ 404.1522 and 416.922; however, plaintiffs insist the policy was public only after August 20, 1980, when SSR 82–55 became effective. Plaintiffs, therefore, request that the court order the Secretary to redetermine all claims denied due to the unpublicized policy refusing to consider the combined effect of "not severe" impairments between December 1978 and August 20, 1980.

Plaintiffs also contend that on October 23, 1980, the Secretary circulated an internal memo containing twenty examples of medical conditions considered "not severe," expanding from its original five examples. The twenty examples were not published. Plaintiffs claim failure to publish establishes a clandestine policy. Despite numerous allegations that the examples were being misapplied, the Secretary issued SSR 82–55, which included the twenty examples, in 1982 but did not publish the ruling. Plaintiffs claim that an unpublished SSR is secretive conduct that implies a clandestine policy. Plaintiffs also contend that the Secretary's ignoring the adverse impact of the use of the twenty examples reported in

May 1983 shows intent to misapply step two; the Secretary did not withdraw SSR 82–55 until April 1985.

Defendant asserts that the noncombination policy was openly applied between 1978 and 1980, thus the Third Circuit's holding in Bailey has conclusively determined that no further relief is appropriate for that period. Defendant maintains that a clandestine policy requires intent and plaintiffs have failed to establish this intent. Defendant also maintains that the internal memoranda show the agency's continuing concern with proper application of the "not severe" standard rather than its attempt to implement a harsher standard. Finally, defendant contends that plaintiffs' exhibits do not purport to show agency policy.

## II. DISCUSSION

### A. The Summary Judgment Standard

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. denied, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); Smith v. Pittsburgh Gage & Supply Co., 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

---

**4.** The reports listed as numbers 4, 5, and 9 recently became available from the Dixon v. Heckler litigation pending in the District Court for the Southern District of New York. Dixon v. Heckler, No. 83–7001 (S.D.N.Y.). The Dixon court rejected the Secretary's assertion of deliberative process privilege. See Plaintiff's Brief at 12.

■ Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Bowen v. Yuckert*

The United States Supreme Court upheld the severity regulation as valid on its face in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The *Yuckert* Court noted that the Act defined "disability" as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." *Id.* at 2293 (citing 42 U.S.C. § 423(d)(1)(A)). The challenged severity regulation requires the claimant to show that he or she has an "impairment or combination of impairments which significantly limits ..." "the abilities and aptitudes necessary to do most jobs...." 20 C.F.R. §§ 404.1520(c), 404.1521(b) (1986). The Court stated that if the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity. 107 S.Ct. at 2293.

The Court noted that Congress conferred exceptionally broad authority on the Secretary to prescribe standards for applying certain sections of the Act, *id.* (citing *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983)), including authority to adopt regulations that provide for the nature and extent of the proofs and evidence in disability cases. In a footnote, the Court stated that "[t]he severity regulation plainly adopts a standard for determining the threshold level of severity: the impairment must be one that 'significantly limits your physical or mental ability to do basic work activities.'" *Id.* 107 S.Ct. at 2297 n. 11 (citing 20 C.F.R. § 404.1520(c)). The regulations define "basic work activities" as "walking, standing, sitting, lifting, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking, ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations ... [d]ealing with changes in a routine work setting." 20 C.F.R. § 404–1521(b)(1)–(6). According to the Court, the statute expressly places the burden to show a medically determinable impairment on the claimant. 107 S.Ct. at 2293. If the claimant is not able to meet the burden of establishing this threshold showing of medical severity, the Court concluded, the Secretary had no reason to consider the claimant's age, education, and work experience. *Id.* at 2294.

Justice O'Connor, in a concurrence joined by Justice Stevens, stated that empirical evidence supported the inference that the regulation, although valid on its face, had been used in a manner inconsistent with the statutory definition of disability. *Id.* at 2299 (O'Connor, J., concurring). Justice O'Connor stated that, in her view, step two could not be used to disqualify those that meet the statutory definition of disability. *Id.* (O'Connor, J., concurring). Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking vocational analysis. *Id.* (O'Connor, J., concurring).

The Court did not address Yuckert's contention that the regulation was invalid as

applied because the Court of Appeals for the Ninth Circuit has not addressed the issue below. The Court did note, however, that many courts of appeals held that the Secretary exceeded his authority by denying large numbers of claims at step two. *Id.* at 2297.

The Secretary asserts that *Yuckert* requires that this court enter summary judgment in his favor. Plaintiffs, however, claim that the regulation is invalid as applied. Their evidence of the Secretary's use of a harsher standard consists of evidence that the number of federal returns to state agencies dramatically increased after 1976, that the Secretary implemented the use of examples that were systematically misapplied and resulted in inappropriate denials of benefits, and that the Secretary's noncombination policy resulted in inappropriate denials of benefits.

### C. *Bailey v. Sullivan*

In a class action of Pennsylvania and Delaware claimants who had been denied SSA or SSI benefits at step two, the Court of Appeals for the Third Circuit recently decided that portions of the Secretary's regulations and rulings, as applied, were inconsistent with the Social Security Act and were, therefore, invalid. *Bailey v. Sullivan*, 885 F.2d 52, 61 (3d Cir.1989). The *Bailey* class was limited to claimants who had received a final decision of the Secretary denying benefits because their impairments were not severe and who had a petition for review pending in federal court at the time of the decision of the class action or had received unfavorable rulings from the Secretary but who had not

exhausted their administrative remedies.[5] *Id.* at 56.

The Third Circuit did not address plaintiffs' claim that the Secretary had a policy to use a harsher standard than permitted by the *Yuckert* Court to foreclose meritorious claims; rather, the court considered only whether the misapplication claims could proceed as a class action. *Id.* at 57. The court concluded that *Yuckert* did not preclude plaintiffs from seeking a declaration that the Secretary cease and desist from systematically misapplying the severity regulations, and remanded for a determination by the district court as to whether the claim should proceed as a class action. *Id.* at 58–59. The court also affirmed the district court's denial of leave to file a second amended complaint to add a challenge to SSR 85–28. *Id.* at 59.

The Third Circuit affirmed the district court's invalidation of the noncombination policy applied through 20 C.F.R. §§ 404.-1522, 416.922, and SSR 82–55. Noting that all the circuit courts of appeals had concluded that the noncombination regulations were invalid, the court rejected the Secretary's "cramped interpretation of the statutory language and legislative history" of the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 4(a)(1), 98 Stat. 1794, 1800 (1984). 885 F.2d at 61. The court, therefore, affirmed the district court's order invalidating 20 C.F.R. §§ 404.1522, 416.922, and SSR 82–55, and requiring the Secretary to afford claimants who were denied benefits on the basis of these provisions an opportunity to have their claims reconsidered.[6]

---

**5.** The class was defined as follows:

> All persons [in Pennsylvania and Delaware] who have been denied Social Security disability or Supplemental Social Security Income disability benefits because their impairments were found not to be severe, without consideration of age, education and work experience or because their impairments were not considered in combination and who, at the time of this court's decision on the merits of this case have
>
> (a) received a final decision of the Secretary and have a pending case challenging the denial of benefits; or
>
> (b) who have not exhausted administrative remedies but have received an unfavorable

> result of the application of the severity regulations and ruling, including all persons denied as a result of the application of the challenged regulations and ruling but who have not taken an appeal to the federal courts.
>
> The onset date for class membership shall be March 10, 1984.
>
> *Bailey v. Sullivan*, 885 F.2d 52, 63 (3d Cir.1989).

**6.** The court affirmed the district court's dismissal of plaintiffs' Administrative Procedure Act ("APA") challenges to these regulations and rulings. 885 F.2d at 62.

The court held that the class entitled to relief on the ground that their claims had been denied under the combination policy did not include any claimants whose claims lapsed, that is, claimants who failed to exhaust administrative remedies or claimants that had failed to seek judicial review after receiving a final decision from the Secretary, before the filing of the action. *Id.* at 64. The court stated that the policy had been openly applied, and therefore plaintiffs' rights would have been vindicated by seeking judicial review at the time their claims were decided. *Id.* The court concluded that those claimants who were denied benefits under the invalid noncombination policy that still had an opportunity to pursue administrative appeals or request judicial review at the time the class action was filed were entitled to readjudication of their claims. *Id.* at 65.

### D. *Increase in Federal Returns*

■ To demonstrate that the Secretary applied the regulation so as to contravene the Social Security Act, plaintiffs offer the Lachman affidavit which states that, after 1976, the Secretary effected an internal policy change by greatly increasing the number of federal returns with instructions that ODD deny the claim as only having "slight" impairment. Notably, Lachman was not cross-examined on this material. Additionally, Lachman failed to set forth facts to support his conclusion that the SSA applied an increasingly strict threshold standard; rather he asserted his conclusion that the increase was due to the Secretary's policy. This evidence does not demonstrate a policy; it merely recognizes that the number of returns was increasing. Other factors might have prompted the change.[7] The affidavit, therefore, offers little probative evidence of the Secretary's use of a harsher standard than permitted by *Yuckert.*

Additionally, the Third Circuit recently held that the Secretary's noncombination

policy was invalid because it is inconsistent with the Social Security Act. *Bailey v. Sullivan,* 885 F.2d 52, 61 (3d Cir.1989). Use of this invalid policy may have greatly increased the number of federal returns after 1978. Therefore, plaintiffs' argument that an increase in returns proves that the Secretary used a harsher standard is circular: an invalid policy caused a greater number of returns which shows the Secretary's invalid policy. The Third Circuit has determined that the noncombination policy is invalid; this court need not redetermine the issue. Relief to *Wilson* class members denied benefits on the basis of the illegal noncombination policy may be appropriate. Plaintiffs ask this court to infer that the increased number of returns reflects the Secretary's harsher policy for all claimants denied at step two, not only those denied under the invalid noncombination policy. This court refuses to do so. Deposition testimony about the increased number of returns is not probative of the harsher standard for all claimants denied at step two; it merely demonstrates the statistical impact of the Secretary's noncombination policy, for which the Third Circuit has determined the appropriate relief. *See Bailey v. Sullivan,* 885 F.2d 52, 61 (3d Cir.1989).

Plaintiffs offer Joseph Kelly's statements about the "confusing and arbitrary expansion of the formal sequential analysis process" and the "unwarranted extension of the process." Kelly noted that the new procedure "does not even represent formalized policy as an adjudicative guideline." Plaintiffs have taken these comments out of context. The text of the memo states:

In addition to the need for promulgation of a clearcut formal policy on the "slight" impairment issue, there is a need to emphasize to C/O the problems in the field which arise when confusing and arbitrary expansion of the formal sequential analysis process occurs. *In our opinion, such an unwarranted ex-*

---

7. As discussed *infra,* many factors may affect the percentage of claimants denied benefits at step two. A downturn in the economy, vigorous quality assurance, and shifts from another categories of denials may all cause an increase in

claimants denied benefits because their impairments are "not severe." *See infra* at 168. Additionally, the use of the invalid noncombination policy could increase the number of federal returns.

**168**

*pansion of the process has occurred in the Psychiatric Review Forms (SSA–2506B) and the new QA Review Form (SSA–3094) which introduce a new step in assessment of severity, "moderately severe".... The New QA Review Form does not define moderate and moderately severe at all except in terms of each other and in relation to adjacent severity levels, e.g. more than slight and less than severe but closer to one or the other.*

This specious distinction appears nowhere in existing regulations or guidelines pertaining to disability evaluation. We have strongly protested the validity of utilizing any rating system for claims evaluation that is so ambiguous and arbitrary, particularly when the system does not even represent formalized policy as an adjudicative guideline.

Memorandum of Joseph J. Kelly (Jan. 4, 1977) (emphasis added). The statements quoted by plaintiffs in their brief do not refer to the issue before the court, that is, whether the Secretary used a harsher standard than permitted by *Yuckert* to determine that impairments are "not severe." The critical language refers to the "moderately severe" evaluation that is not at issue here. These statements, therefore, do not offer probative evidence of the Secretary's misapplication of step two.

Plaintiffs assert that the Houben correspondence dated December 27, 1976, which expresses concern over the increasing number of federal returns and finds that the returns did not relate to the current regulations, establishes the Secretary's use of a harsher standard than contemplated by *Yuckert*. The paragraph quoted by plaintiffs provides:

[O]ur staff as well as staff in other State agencies have been expressing concern over the ever increasing returns of cases with suggestions a denial based on slight impairment is appropriate. We have had difficulty in relating these individual cases to the current regulations and the provisions in the State Manual.

Letter of Sidney Houben to Elmer Smith, Associate Commissioner, Office of Pro-

gram Policy and Planning (Dec. 27, 1976). The letter continues by stating that the proposed changes in the definition, which were eventually adopted in 1978, "make it much clearer as to why these returns were forthcoming." The letter then notes that "we believe this supports our feeling that this change is more than a technical clarification of language."

The increased number of returns here cannot be attributed to the noncombination policy articulated in 1978; nonetheless, mere disagreement about the appropriateness of proposed regulations does not establish that the Secretary used a harsher standard to evaluate disability. Certainly proposed regulations would prompt debate. In fact, Houben was responding to a request for comments. The court may consider the deliberative nature of the document in weighing its probative value. The court finds that this evidence is not probative of the Secretary's policy to use a harsher standard to deny disability claims. To hold otherwise would constrain the Secretary from implementing new policies simply because someone within SSA disagreed with the change. Given that the Secretary is charged with broad policy-making responsibility, the court will not infer that such deliberations show intent to violate the requirements of the Act, or show a violation of the requirements of the Act in fact.

SSA's Not Severe Impairment Work Group conclusion that, given the increase in the number of denials, the Secretary either misapplied the standard before 1975 or was misapplying it after 1975 does not offer probative evidence that the Secretary used a harsher standard. The statement is, at best, inconclusive about whether the Secretary utilized the proper standard after 1975.

The study entitled "The Disability Process: The Concept of Impairment Not Severe" shows that denials increased twenty percent in 1977 and 1978 and 12.6 percent in 1979 (from 14.8 percent overall in 1976 to 57.2 percent overall in 1979). Plaintiffs offer no evidence that the study concludes that the Secretary caused the increase. In

fact, the report suggests several other factors that could have caused the large increase in denials, including the bad state of the economy. According to the report, during a downturn in the economy, more claims are filed, thus, it is likely that a greater than usual proportion of applicants are not severely impaired. The report also recognized that the quality assurance process informed the adjudicators of the types of cases in which a determination of impairment "not severe" was expected and, therefore, increased the number of cases finding impairment "not severe." The report also noted that many such claims were previously denied at the "ability to do usual work" stage of the evaluation process, thus, the increase represented a shift from another category of denials.

As noted *supra*, the increase in returns could also be attributed to the Secretary's use of the noncombination policy later found to be invalid. The court will not infer that the Secretary used a harsher standard to evaluate *all* claims simply because the noncombination policy skews the statistics.

This report is not probative evidence that the Secretary had a policy to apply a harsher standard than permitted under *Yuckert.* The report merely recites statistics from which this court may draw many different inferences. The report specifically attributes the increase in denials to factors other than the Secretary's policy.

### E. *Misapplication of the Twenty Examples*

Plaintiffs offer the deposition testimony of Albert Harrison, Deputy Director of the Division of Medical and Vocational Policy in SSA's Office of Disability. Harrison stated that the twenty examples of "not severe" impairment that the Secretary implemented in 1980 were often misapplied because adjudicators tended to apply the examples to deny benefits to cases in which the disability was more severe. The deposition does not reveal whether this misuse occurred before or after SSR 82–55 was implemented or published. Plaintiffs also offer the deposition testimony of Patricia

Owens, SSA's former Associate Commissioner for Disability and head of the Office of Disability from 1982 to September 1986. Owens's deposition corroborates Harrison's contention that the examples were often misapplied.

The probative value of this evidence is questionable. That adjudicators misapplied the examples does not tend to show that the Secretary implemented a policy to use the examples to increase the number of denials of benefits. In fact, it appears that the Secretary continued to study and to review the examples in step two to evaluate whether adjudicators properly applied the "not severe" standard. *See* Office of Disability Staff, *Report on the Not Severe Case Study* (Mar. 16, 1986); Office of Policy and Procedures of OHA Staff, *The Sequential Evaluation of Disability: An Analysis of the Not Severe Test* (May 1983); Office of Disability Staff, *The Disability Process: The Concept of Impairment Not Severe* (undated). The court will not assume that the SSA's recognition of problems implementing the proper use of new procedures, such as use of examples, is evidence of its use of a harsher standard. In fact, the SSA adopted suggested changes to improve the procedure. *See, e.g.,* Office of Disability Staff, *Report on the Not Severe Case Study* 12 (Mar. 16, 1986) (SSR 85–28 issued to clearly outline threshold level).

Although plaintiffs cite statistics to show the extent of misapplication of the examples to deny benefits, the record does not show gross misapplication. According to plaintiffs, the March 16, 1986 Report on the Not Severe Case Study ("Report") prepared by staff members of the Office of Disability states that, in thirty-seven percent of the study cases, state agencies did not apply the "not severe" step correctly. But, the court is unable to find any such statistic in the Report. Admittedly, the Report states that the "not severe" step "has not been clearly understood nor consistently applied. Clarification is needed." Report at 12. The Report does not, however, indicate the pervasive, systematic misapplication that plaintiffs suggest.

Plaintiffs maintain that another study, prepared by staff within the Office of Policy and Procedures of the Office of Hearing and Appeals ("OHA"), entitled "The Sequential Evaluation of Disability: An Analysis of the Not Severe Test" demonstrates that the "not severe" standard of SSR 82–55 far exceeded the pre–1978 slight impairment standard. The study concluded that the "not severe" test articulated in SSR 82–55 was "inconsistent with pertinent case law ... and [i]s so substantially different from the medical listings and the slight impairment provision as to be without support in terms of administrative precedent."

Again, plaintiffs quote out of context. The study evaluates the "not severe" standard as amplified in SSR 82–55. SSR 82–55 incorporates both the noncombination policy and the twenty examples of "not severe" impairments. Much of the study is devoted to comparison between the "not severe" standard and the "slight impairment" standard used previously.

The study hurls substantial criticism at various aspects of the "not severe" standard, however, many of these criticisms have already been addressed in the courts. For example, the study's criticism of SSR 82–55's provision that step two determinations could be made on medical considerations alone was rejected by the United States Supreme Court in *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). Likewise, any criticism in the study concerning the noncombination policy is immaterial here because the Third Circuit has already adjudicated this issue and determined the appropriate relief. *Bailey v. Sullivan*, 885 F.2d 52, 61 (3d Cir.1989). Because higher courts have conclusively ruled on these issues, criticism of these portions of SSR 82–55 are simply not probative here to show that the Secretary had a policy to impose a harsher standard.

Plaintiffs fail to distinguish the study's criticism of the noncombination policy with its criticism of the twenty examples. The court finds that the study's conclusion that SSR 82–55 is "inconsistent with pertinent case law" and "without support in terms of administrative precedent" refers to the noncombination policy, which the Third Circuit later agreed was invalid. *See Bailey v. Sullivan*, 885 F.2d 52, 61 (3d Cir.1989). The study is, therefore, correct when it states that the "not severe" standard far exceeds the pre–1978 "slight impairment" standard. The conclusion that the *twenty* examples or other portions of SSR 82–55 are likewise condemned, however, does not flow from this finding. The study offers no probative evidence that the use of the twenty examples imposed a harsher standard.

■ Plaintiffs have not made a colorable showing that the increased number of federal returns and Secretary's use of twenty examples that were ultimately misapplied constitute a system-wide policy to utilize a harsher standard than permitted by *Yuckert* and the Act. On close examination, the documents presented by plaintiffs boil down to the observations of ODD officials that the number of federal returns increased dramatically and the testimony of two New York SSA officials that the examples were often misapplied. The evidence does not establish that the Secretary's policy caused these results. Summary judgment must be entered against the party who has failed to make a sufficient showing to establish the existence of an essential element of his or her case that will be that party's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). While a clandestine, system-wide policy to employ a harsher standard may be a permissible inference from this scant evidence, this court finds that the evidence falls within the *Matsushita* Court's definition of "simply show[ing] that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Plaintiffs cannot prevail on their motion for summary judgment on this scant evidence; neither can they avoid the Secretary's motion for summary judgment on the issue that the regulation is valid as applied notwithstand-

ing the increase in federal returns and the misapplication of the examples.[8]

### F. *Use of the Secretary's Noncombination Policy*

█ Plaintiffs maintain that the Secretary used an unpublicized and illegal "noncombination" policy between December 1978 and August 20, 1980. Plaintiffs, therefore, request that the court order the Secretary to redetermine all claims denied due to the unpublicized policy refusing to consider the combined effect of "not severe" impairments between December 1978 and August 20, 1980. During this period, plaintiffs maintain, the Secretary refused to consider "not severe" impairments in combination at step two to determine whether the claimant's combined "not severe" impairments significantly limited his or her physical or mental ability to do basic work activities. Although the issue seems to be conclusively determined by the Third Circuit in *Bailey v. Sullivan,* 885 F.2d 52 (3d Cir.1989), *see supra* note 3, plaintiffs assert that the Secretary used this illegal policy before he promulgated the 1980 rulings and regulations struck down in *Bailey,* therefore, further relief is appropriate.

As evidence of the Secretary's use of the noncombination policy before 1980, plaintiffs point to Defendant's Answers to Interrogatories, which admit that official guidelines, such as the Disability Insurance State Manual ("DISM") 321B, dated December 1978, provided that the SSA did not consider the combined effect of unrelated "not severe" impairments. Defendant admitted that DISM 321B instructed adjudicators to assign the code 922 to claims that were denied on the basis of medical considerations alone if the claimant had multiple impairments and the adjudicator believed that the impairments, in combination, restricted the claimant's functional ability.

█ Plaintiffs have made a colorable showing that the Secretary used the noncombination policy before the 1980 rulings and regulations were promulgated. The Social Security Act, however, imposes a sixty day limitation on claimants seeking to obtain review in federal district court of an adverse decision of the Secretary. 42 U.S.C. § 405(g). Equitable tolling of the sixty day limitation is available to plaintiffs if they can show that the policy of the Secretary refusing to consider combinations of "not severe" impairments was clandestine. *Bowen v. City of New York,* 476 U.S. 467, 481–82, 106 S.Ct. 2022, 2030–31, 90 L.Ed.2d 462 (1985). As noted *supra,* the *Bailey* court determined that the Secretary openly applied the noncombination policy pursuant to 20 C.F.R. §§ 404.1522, 416.-922, and SSR 82–55. If this policy was clandestine before the regulations and ruling were promulgated, plaintiffs may be entitled to retroactive expansion of the class to include claimants denied benefits under this policy between December 1978 and August 20, 1980.[9]

Defendant maintains that a clandestine policy requires intent and plaintiffs have failed to establish this intent. In *Bowen v. City of New York,* 476 U.S. 467, 481–82, 106 S.Ct. 2022, 2030–31, 90 L.Ed.2d 462 (1985), the United States Supreme Court held that equitable tolling of the sixty day limitation was appropriate because the Sec-

---

**8.** The court, therefore, does not reach plaintiffs' argument that the Secretary clandestinely implemented the twenty examples by failing to publish them until 1982. Plaintiffs contend that on October 23, 1980, the Secretary circulated an internal memo containing twenty examples of medical conditions considered "not severe," expanding from its original five examples. The twenty examples were not published. Plaintiffs claim failure to publish establishes a clandestine policy. Despite numerous allegations that the examples were being misapplied, the Secretary issued SSR 82–55 in 1982, but did not publish the ruling. Plaintiffs claim that an unpublished SSR is secretive conduct that implies a clandestine policy. Plaintiffs also contend that the Sec-

retary's ignoring the adverse impact of the use of the twenty examples reported in May 1983 shows intent to misapply step two; the Secretary did not withdraw SSR 82–55 until April 1985.

**9.** The court notes that the affidavit of Jean Hinckley, Director of the Litigation Staff, Office of the Deputy Commissioner for Programs, Social Security Administration, states that, from 1978 to 1983, the New Jersey DDD used the code 922 only once. Therefore, any retroactive expansion of the class would include at most only one additional plaintiff.

retary's secretive conduct of issuing internal memoranda, returns, and reviews that mandated an unwarranted presumption at the initial state psychiatric assessment prevented plaintiffs from knowing of a violation of their rights. The presumption mandated that a failure to meet or equal the listings was tantamount to a finding of ability to do at least unskilled work. *Id.* at 473, 106 S.Ct. at 2026. The policy had the effect of eliminating steps four and five from the sequential evaluation process, and ignored the requirement for an individualized Residual Functional Capacity ("RFC") assessment to determine whether a claimant with a severe condition is nonetheless able to work. *Id.*

The district court had found that "SSA had relied on bureaucratic instructions rather than individual assessments and overruled the medical opinions of its own consulting physicians that many of those whose claims they were instructed to deny could not, in fact, work." *Id.* at 474 n. 5, 106 S.Ct. at 2027 n. 5 (citing *City of New York v. Heckler*, 578 F.Supp. 1109, 1124 (E.D.N.Y.1984)). The district court continued:

> Physicians were pressured to reach "conclusions" contrary to their own professional beliefs in cases where they felt, at the very least, that the additional evidence needed to be gathered in the form of a realistic work assessment. The resulting supremacy of bureaucracy over professional medical judgments and the flaunting of published, objective standards is contrary to the spirit and letter of the Social Security Act....
>
> The bureaucratic assessment of residual functional capacity if it was done at all was reduced to a paper charade where the SSA physician completed a cursory report or checked off a form knowing the conclusion had to be that the claimant had the capacity for unskilled work.

*Id.*

The Supreme Court found that the sixty day limitation was properly tolled. 476 U.S. at 481–82, 106 S.Ct. at 2030–31. The Court noted that equitable tolling was consistent with Congress's intent in enacting § 405(g) because Congress designed the Social Security Act to be "unusually protective" of claimants. *Id.* at 480, 106 S.Ct. at 2030 (citing *Heckler v. Day*, 467 U.S. 104, 106, 104 S.Ct. 2249, 2250, 81 L.Ed.2d 88 (1984)). Additionally, the Court found that Congress authorized the Secretary to toll the sixty day limit based on considerations of fairness to claimants, *id.* 476 U.S. at 480 n. 12, 106 S.Ct. at 2030 n. 12 (citing 20 C.F.R. § 404.911, 404.1411 (1985)), thus indicating Congress's intent to allow tolling in some cases. Noting that, where the equities in favor of tolling the limitations period are "so great that deference to the agency's judgment is inappropriate," the court concluded that application of equitable tolling was appropriate given the compelling equities in favor of tolling here. Quoting the opinion of the Court of Appeals for the Second Circuit, the Court stated that:

> All of the class members who permitted their administrative or judicial remedies to expire were entitled to believe that their Government's determination of ineligibility was the considered judgment of an agency faithfully executing the laws of the United States. Though they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge. Where the Government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action.

*Id.* at 480–81, 106 S.Ct. at 2030 (quoting *City of New York v. Heckler*, 742 F.2d 729, 737–38 (2d Cir.1984)).

Other courts have tolled the sixty day limitation under similar circumstances. In *Hyatt v. Heckler*, 807 F.2d 376 (4th Cir. 1986), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987), the Court of Appeals for the Fourth Circuit upheld the district court's tolling of the sixty day limitation where SSA refused to apply the law of that circuit to disability claims involving

diabetes, hypertension, and pain. The court noted that the *Hyatt* claimants' plight was similar to that of the *City of New York* plaintiffs because "[t]hough they knew of the denial or loss of benefits, they did not and could not know that those adverse decisions had been made on the basis of a systematic procedural irregularity that rendered them subject to court challenge." 807 F.2d at 380. The court found that the SSA had not published its directive to Administrative Law Judges ("ALJs") not to cite to conflicting court decisions. *Id.* at 381. The court noted that "[i]t is unrealistic to believe that publication of both the agency's regulations and the court of appeals' decisions would alert lay persons to the Secretary's nonacquiescence in circuit law." *Id.* The *Hyatt* plaintiffs were, therefore, entitled to believe that agencies charged with evaluating claims according to the law had faithfully performed their duties. *Id.*

Similarly, in *Hill v. Sullivan*, 125 F.R.D. 86 (S.D.N.Y.1989), the District Court for the Southern District of New York tolled the sixty-day limitation on filing suit in district court to permit widows and widowers who had been denied benefits because SSA failed to assess the claimants' RFC to join a class action challenging the Secretary's regulations. The court rejected the Secretary's argument that the policy was not clandestine because SSR 83–19 explicitly stated that RFC would not be assessed for widow or widower claimants. *Id.* at 95. The ruling was not published in the Federal Register. While declining to determine whether failure to publish in the Federal Register amounted to a clandestine policy, the court found that failure to publish the challenged ruling "had the same practical effect on claimants" as the Secretary's secretive conduct in *City of New York*, thus, tolling was appropriate. *Id.*

Defendant cites *Smith v. Bowen*, No. 86–C–6054, 1989 WL 51141 (N.D.Ill. May 5, 1989) (available 1989 U.S.Dist.Lexis 5226) to support its contention that the policy was not clandestine. However, this memorandum opinion is not instructive. The opinion does not identify the policy under scrutiny, but merely concludes that "the policies challenged in this action are not system-wide, unrevealed policies that are inconsistent in critically important ways with established regulations." Slip op. at *1. The court also states that the policies are the subject of various SSRs, regulations, and Program Operations Manual System ("POMS") that were "published for all to see." *Id.* These conclusory comments do not supply a rationale for this court to follow, therefore, this court declines to follow its result.

This court also rejects defendant's argument that plaintiffs must show intent and an illegal policy to equitably toll the sixty day limit. The *City of New York* opinion does not require a showing of intent. The evidence in the district court consisted of bureaucratic instructions through the Secretary's issuing internal memoranda, returns, and reviews that mandated that adjudicator use a presumption that precluded proper review of RFC. The *City of New York* Court could reasonably infer intent from the purposeful distribution of these documents, and this court may do likewise.

Defendant asserts that the noncombination policy was openly applied between December 1978 and August 20, 1980, thus the Third Circuit's holding in *Bailey* has conclusively determined that no further relief is appropriate for that period. The Secretary maintains that SSA's policy was stated openly in 20 C.F.R. § 404.1502(a) (1960). This court disagrees. The language of the regulation, as it appeared in 1960, provides that:

> [M]edical considerations alone may justify a finding that the individual is not under a disability where the only impairment is a slight neurosis, slight impairment of sight or hearing, or similar abnormality or combination of slight abnormalities. Also, medical considerations alone ... may justify a finding that the individual is under a disability where his [or her] impairment is one, as shown by the following examples, which would ordinarily be considered as preventing substantial gainful activity ...

*Id.* While the regulation does not expressly indicate that the Secretary will consider

a combination of slight impairments to determine disability, it clearly does not prohibit consideration of the combination of such impairments, as the Secretary suggests. In fact, the regulation later implies that the Secretary will consider combinations of impairments in making the disability determination.

> It must be established by medical evidence, and where necessary by appropriate medical tests, that the claimant's impairment *or impairments* ... result in such a lack of ability to perform significant functions—such as moving about, handling objects, hearing or speaking, or, in a case of mental impairment, reasoning or understanding—that such individual cannot, with his [or her] age, training, education and work experience, engage in any kind of substantial gainful activity.

*Id.* § 404.1502(b) (1960) (emphasis added). This regulation, therefore, does not constitute sufficient notice to claimants that their claims were denied based on the Secretary's policy not to combine "not severe" impairments.

Finally, defendant argues that claimants could obtain DISM 321B under 20 C.F.R. §§ 422.401 *et seq.* (1977) or could inspect and copy the documents at district offices, therefore, its policy was not clandestine. The regulations specifically stated that staff manuals, including DISM 321B, would be available for inspection at the local SSA office. 20 C.F.R. § 422.401(b)(4).

Where the government's secretive conduct prevents plaintiffs from knowing of a violation of rights, statutes of limitations have been tolled until such time as plaintiffs had a reasonable opportunity to learn the facts concerning the cause of action. *City of New York,* 476 U.S. at 481, 106 S.Ct. at 2030 (quoting *City of New York v. Heckler,* 742 F.2d 729, 737–38 (2d Cir. 1984)). While plaintiffs arguably may have had access to the DISM, they did not have a reasonable opportunity to learn the facts

concerning any cause of action. As in *Hyatt v. Heckler,* 807 F.2d 376, 380–81 (4th Cir.1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987), *supra,* plaintiffs were entitled to believe that agencies charged with evaluating claims according to the law had faithfully performed their duties. 807 F.2d at 380–81. Additionally, it is unrealistic to believe that publication of regulations that permit inspection of the agency's procedural manuals would alert lay persons to the Secretary's failure to comply with the requirements of the Social Security Act. Recognizing the Supreme Court's warning in *Bowen v. City of New York,* 476 U.S. 467, 487, 106 S.Ct. 2022, 2033, 90 L.Ed.2d 462 (1986), that "not ... every internal policy that is found to be inconsistent with legal requirements, and arguably touches upon the outcome of a class of cases, will justify tolling the statute of limitations or excusing exhaustion," *id.,* this court nonetheless concludes that in this instance, tolling is appropriate.

This court has found that plaintiffs have made a colorable showing that the Secretary used his illegal noncombination policy between December 1978 and August 20, 1980. The motion of the Secretary for summary judgment on this issue will, therefore, be denied. The court also notes that the Secretary has failed to come forward with evidence that he did not implement the illegal noncombination policy prior to introduction of the 1980 regulations and ruling. This court may grant summary judgment even if the movant's evidence is merely "colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Plaintiffs' motion for summary judgment on the issue will, therefore, be granted. The court determines that tolling is appropriate here, thus, retroactive expansion of the class to include claimants denied benefits based on the illegal noncombination policy expressed in DISM 321B is permitted under *City of New York.* The class,[10] however, will be

---

10. The class currently consists of "all New Jersey residents who have filed or will file applications for disability benefits under titles II and/or XVI of the Social Security Act and

whose claims will be affected by step two of the Secretary's sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), and 416.921 (1983), and in the Secre-

expanded to include only those claimants denied benefits between December 1978 and August 20, 1980 on the basis of the noncombination policy as expressed in DISM 321B. Under *Bailey v. Sullivan,* 885 F.2d 52, 61 (3d Cir.1989), the class will not be expanded to include those claimants whose claims lapsed before the filing of the class action, but will include any claimants that still had an opportunity to pursue administrative appeals or request judicial review at the time the class action was filed. *Id.* at 64–65.

### G.  Plaintiffs' Request for Further Discovery

 Plaintiffs seek to depose twelve adjudicators from New Jersey DDD to undercover evidence of the Secretary's allegedly clandestine policy to use a harsher standard to deny disability benefits at step two. Plaintiffs have offered deposition testimony taken in the case *Dixon v. Heckler,* No. 83–7001 (S.D.N.Y.) and now seek similar testimony from New Jersey officials.

The court will deny plaintiffs' request for further discovery. Plaintiffs have already received extensive discovery in this case. Plaintiffs' eleventh-hour request to depose twelve additional employees will cause substantial delay in the resolution of this already protracted litigation. Defendant will be prejudiced by the extended delay in resolution of this case; years of discovery thus far have uncovered only the most attenuated evidence that the Secretary has a clandestine policy to impose an illegally harsh standard. Plaintiffs have had ample opportunity to fish for evidence of this policy. The time has come to bring this litigation to its final resolution. No further discovery will be permitted.

### III.  CONCLUSION

The Secretary's motion for summary judgment with respect to plaintiffs' claim that the Secretary used a harsher standard to evaluate disability than permitted by *Yuckert* and the Social Security Act, as evidenced by the increase in the number of federal returns and the use of the twenty

examples that were misapplied, will be granted. Plaintiffs have failed to meet their burden to come forth with evidence that, in light of their burden of proof at trial, could be the basis for a jury finding in their favor. *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The Secretary's motion for summary judgment will be denied with respect to plaintiffs' claim that he utilized an illegal policy by refusing to combine "not severe" impairments in making the disability determination at step two. Rather, the court will grant plaintiffs' motion for summary judgment on this issue. Because this court has determined that this illegal policy was utilized prior to the introduction of rulings and regulations on August 20, 1980, and was therefore clandestine, plaintiffs denied benefits under this policy between December 1978 and August 20, 1980 are entitled to equitable tolling of the sixty day limitation for filing in federal district court for review of the final decision of the Secretary. The class is restricted to those claimants that still had an opportunity to pursue administrative appeals or to request judicial review at the time the class action was filed, but excludes those claimants whose claims had lapsed at the time the action was filed.

Finally, plaintiffs' request for an order compelling further discovery will be denied. Plaintiffs have already had nearly seven years of discovery, yet have uncovered only insubstantial evidence that the Secretary imposed a harsher standard than permitted under the Social Security Act. Plaintiffs' license to fish has expired.

An appropriate order will be entered.

tary's then current interpretation of those regulations, SSR 82–55 (1982)."